ROMA CONSTRUCTION COMPANY,
INC. and Peter Zanni

v.

Ralph aRUSSO; Benjamin Zanni; Domenic DeConte; Vincent Iannazzi; Anthony Izzo; John Doe; Richard Roe; Town of Johnston; XYZ Assoc.; and Others Yet Unknown.

Civ. A. No. 94–0448B.

United States District Court,
D. Rhode Island.

Oct. 3, 1995.

Ina P. Schiff, Providence, RI, Henry Spaloss, Nashua, NH, for Plaintiffs: Roma Construction Co., Peter Zanni.

Julius C. Michaelson, Samuel D. Zurier, Michaelson & Michaelson, Providence, RI, Thomas A. DiLuglio, Johnston, RI, for Defendant: Ralph R. aRusso.

William P. Devereaux, Robin–Lee Main, McGovern, Noel & Benik, P.C., Providence, RI, Thomas A. DiLuglio, Johnston, RI, for Defendant: Domenic DeConte.

Thomas A. DiLuglio, Johnston, RI, for Defendant: Benjamin R. Zanni.

Amato A. DeLuca, Mandell DeLuca & Schwartz, Providence, RI, Thomas A. DiLuglio, Johnston, RI, for Defendant: Vincent Iannazzi.

C. Russell Bengston, Carroll, Kelly & Murphy, Providence, RI, Richard C. Tallo, Cranston, RI, Thomas DiLuglio, Johnston, RI, for Defendant: Anthony Izzo.

Marc DeSisto, Kathleen M. Powers, DeSisto Law Offices, Providence, RI, Thomas DiLuglio, Johnston, RI, for Defendant: Town of Johnston.

### *OPINION*

FRANCIS J. BOYLE, Senior District Judge.

Defendants, the Town of Johnston and Ralph aRusso, moved to dismiss the amended verified complaint pursuant to Fed. R.Civ.P. 12(b)(6). The Court referred the motion to a Magistrate Judge for a Report and Recommendation. The Magistrate Judge issued his Report on April 18, 1995, recommending that the motion to dismiss be granted and that Rule 11 sanctions be imposed on plaintiffs and plaintiffs' counsel. This Court heard Plaintiffs' objection to the Magistrate's Report and Recommendation. At that time the Court requested that the parties submit supplemental memoranda addressing the legislative history of the Racketeer Influenced and Corrupt Organizations Act (RICO). The Magistrate Judge also issued a second Report and Recommendation in which he recommended that the Motion to Dismiss submitted by Dominic DeConte should be granted as to all defendants. After consideration of the memoranda and argument, the Court adopts the recommendation of the Magistrate Judge that the complaint be dismissed as to all defendants. Rule 11 sanctions, however, will not be imposed.

### I. *FACTS*

Because this is a motion pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim, the facts are drawn from the verified amended complaint and in the light most favorable to the plaintiffs. *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir. 1990). The facts, in accord with this standard, may be stated as follows.

Plaintiff, Roma Construction Company, is a Florida Corporation whose chairman is An-

thony Compagnogne. Plaintiff, Peter Zanni, is a developer residing in Rhode Island.

In 1986, Harry and Russell DePetrillo were in the process of acquiring property in the Town of Johnston called Oak Hill Estates. They planned to develop this property into a residential subdivision which would ultimately comprise 50 homes and have an expected value of $5 million. Early in this venture, upon seeking certain approvals and reviews, the DePetrillos encountered problems with officials employed by the Town of Johnston. After a meeting with some of the defendant officials, the DePetrillos agreed to pay a $40,000 bribe in $10,000 installments in order to secure the timely grant of all necessary approvals from the town.

Sometime in 1986, plaintiffs Peter Zanni and Roma Construction Company entered into a partnership agreement with the DePetrillos whereby the plaintiffs obtained a two-third's interest in the Oak Hill Properties. In December of 1990, the plaintiffs received approval from the Rhode Island Department of Environmental Management for the Oak Hill property. This approval was a prerequisite for its application to the Town of Johnston for further sewer and water permits. Although the plaintiffs satisfactorily completed this application to the Town of Johnston in early 1991, defendant Iannazzi, a town official, refused to sign this application for several months.

It was at this point that the plaintiffs became aware of the DePetrillos agreement to pay bribes to the defendants in return for their cooperation. Thereafter, plaintiff Peter Zanni met with defendant Benjamin Zanni, a member of the Johnston town council. Benjamin Zanni informed him that $40,000 was outstanding on the bribe. Plaintiff Peter Zanni agreed to continuing bribing the town officials by making $10,000 installments. After the first of the installments was paid, defendant Iannazzi signed the sewer and water application.

In July of 1991, plaintiff Peter Zanni's attorney requested $10,000 to bribe Johnston town officials in order to secure official approval of another development project at Belknap Farms. Peter Zanni paid this bribe and approval for the Belknap Farms development was given in August of 1991.

This scenario was repeated in late 1991. Plaintiffs were having a difficult time obtaining town permission for a certain manhole for the Oak Hill development. Plaintiff Peter Zanni called defendant Benjamin Zanni and was told that approval had not been forthcoming until another $10,000 installment was paid. Peter Zanni paid this amount and the next day the manhole was approved.

In the Fall of 1992, defendant Anthony Izzo asked an Oak Hill Partnership employee Mike Casale for the next bribe installment of $10,000. Izzo repeated this request to Casale in the Spring and Summer of 1993.

In November of 1993, the plaintiffs sold almost all of their assets in the Oak Hill Partnership. On August 29, 1994, plaintiffs filed this action against the defendants seeking damages for the diminution in value of their interests in the Oak Hill Estates property as well as exemplary damages, attorney's fees and costs pursuant to the RICO Act.

## II. ANALYSIS

### A. Fed.R.Civ.P. 12(b)(6) Standard.

█ A civil complaint seeking money damages should not be dismissed for failure to state an actionable claim unless it plainly appears that the plaintiffs can prove no set of facts which would entitle them to recover. See Miranda v. Ponce Federal Bank, 948 F.2d 41, 44 (1st Cir.1991), citing Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Furthermore, the question must be resolved in the light most favorable to the plaintiffs with any doubt resolved on their behalf. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### B. The Purpose of the Racketeer Influenced and Corrupt Organizations Act.

Section 1964, Title 18 of the United States Code provides that "[a]ny person injured in his business or property by reason of violation of ... [the RICO statute] ... may sue therefor in a United States district court and shall recover threefold damages ..." Al-

though this may appear to create a private action without limitations, for any person injured by such a violation, this Court must consider whether Congress intended such an open ended meaning. *See Holmes v. Securities Investor Protection Corp. et al.,* 503 U.S. 258, 265–66, 112 S.Ct. 1311, 1316–17, 117 L.Ed.2d 532 (1992); *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 529–30, 103 S.Ct. 897, 903–04, 74 L.Ed.2d 723 (1983). As the Supreme Court stated in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 241, 109 S.Ct. 1775, 1786, 104 L.Ed.2d 268 (1989): "We need not leave our common sense at the doorstep when we interpret a statute."

The language and the legislative history of the RICO Act, codified at 18 U.S.C. § 1961 *et seq.,* illustrate that Congress intended that RICO both eradicate " 'organized crime from the social fabric' by divesting 'the association of the fruits of the ill-gotten gains' ", *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 910 (3rd Cir.1991), *quoting United States v. Turkette,* 452 U.S. 576, 585, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981), and to provide *innocent* victims with proper redress. *See* Organized Crime Control: Hearings on S.30 Before the Subcomm. No. 5 of the House Committee on the Judiciary, 91st Cong., 2nd Sess. 519–520 (1970) (statement of Hon. Sam Steiger, U.S. Rep.).

█ Through RICO, Congress granted certain powers to the United States District Courts which allowed the seizure of ill-gotten property and the forced divestment of interests in similar activities as well as the award of treble damages. *See* 18 U.S.C. §§ 1963, 1964 (1984). The legislative history also shows that Congress intended not only to strike at the wrongdoers but to protect the innocent and provide them with adequate compensation. Although it appears that Congress did not consider the exact circumstances that now face the Court, it is clear from the record that the civil remedies provided by the statute were designed to protect *innocent* parties only.

The RICO statute was passed by both houses of Congress as part of the Organized Crime Control Act of 1970 (O.C.C.A.), P.L. 91–452. The "Findings and Purpose" of the Organized Crime Bill states that "Congress finds that ... organized crime activity in the United States ... harms innocent investors and competing organizations." S. 30, 91st Cong., 2d Sess. (1970). Moreover, the sponsor of the provision that eventually created a private civil remedy, Rep. Samuel Steiger, stated, "I want to make it very clear that the record we are making here is a record of significance. It is the intent of this body, I am certain, to see that innocent parties who are the victims of organized crime have a right to obtain proper redress." 116 Cong. Rec. H35346–47 (Oct. 7, 1970) (statement of Rep. Steiger).

## C. *The Plaintiffs Are Not Innocent Victims*

Plaintiffs strenuously argue that they fit within the class of persons meant to be protected by the RICO statute; that they are victims of an extortion scheme to which they had no viable alternative but to comply and that this scheme caused delays which diminished the value of their investment in Oak Hill Properties.

Rhode Island General Law § 11–7–4 makes it illegal to give a bribe to a public official. That section states that "[n]o person shall corruptly give ... any gift or valuable consideration to ... any public official as an inducement or reward for doing or forebearing to do ... any act in relation to the business of ... the state, city or town of which he or she is an official." R.I.Gen.Laws § 11–7–4 (1994). Although it is not necessary to determine here whether the plaintiffs are criminally liable under this section of the Rhode Island General Laws, it is important to note that denial of the defendants' purported extortion defense is correct as a matter of policy. *See* Model Penal Code § 240.1, commentary at 41 (1980). Commentary to section 240.1 of the Model Penal Code addresses this issue. The commentary to the Model Penal Code states that,

[t]he private citizen who responds to an official's threat of adverse action by paying money to secure more favorable treatment evidences thereby a willingness to subvert the legitimate processes of government. It is not acceptable to pay ... under-the-

table compensation to a public servant, even if such payment is required in order to obtain official action rightfully due. Such conduct constitutes a degree of cooperation in the undermining of governmental integrity that is inconsistent with the complete exoneration from criminal liability.

Model Penal Code § 240.1, commentary at 41 (1980).

 The plaintiffs here are neither innocent nor victims. According to the verified amended complaint, the plaintiffs agreed to pay a $40,000 bribe in order to assure timely processing of the permits and approvals necessary for the development of the Oak Hill Estates properties. When first approached they had the opportunity, and more importantly the obligation, to avoid whatever damage may have resulted from the extortionate demands by reporting the defendants to the appropriate law enforcement officials.[1] Instead they chose another course whereby, over a period of many months, they continued to make installment payments on this illegal $40,000 graft whenever they needed another approval or permit from the Johnston officials.

 This Court is aware that plaintiff Zanni vigorously argues that he is a victim, not a collaborator. Furthermore, plaintiff Zanni uses his alleged innocence to propose that a motion to dismiss cannot be supported by the equitable defense of *in pari delicto*.[2] Plaintiff contends that RICO is modeled after § 4 of the Clayton Act, and because the Supreme Court generally does not permit *in pari delicto* defenses in antitrust, then by

extension, neither should this Court in RICO cases.

However, Plaintiff's analogy to antitrust law is not satisfactory because the public policy aims of antitrust law, such as § 4 of the Clayton Act, and RICO are different. Private antitrust litigation serves the public interest of economic competition. Admittedly, the anti-competitive plaintiff who receives treble damages may be "no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition." *Bieter Co. v. Blomquist*, 848 F.Supp. 1446, 1448 (D.Minn.1994) (developer brought RICO charges against former town officials), *quoting Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968). Rather than encouraging a positive result, i.e., competition, Plaintiff's view of RICO would encourage crime, obviously a negative result.

The court in *Bieter Co.* was careful to point out that the defendants did not claim Bieter was involved in the same alleged bribery for which Bieter sought relief. *Id.* at 1450. Here, the complaint portrays plaintiffs and defendants as merely opposite sides of the same filthy lucre. The plaintiffs were completely involved in the illicit venture as were the defendants. There is no bribery unless there is someone willing to pay it. Plaintiff had a plethora of administrative and judicial remedies available to enforce their legitimate claims. Rather, they chose a "short cut" and greased the outstretched palm. Plaintiffs provided the grease.

In contrast to antitrust laws, a private cause of action under RICO is calculated to

---

1. Indeed, the plaintiffs may not be able to recover damages under RICO because their purported damages may not have been proximately caused by the defendants' actions but rather by the plaintiffs' failure to timely report the extortion to the authorities. *See Holmes v. Securities Investor Protection Corp. et al.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (Supreme Court found that the imposition of civil remedies pursuant to the RICO Act required the defendant's acts to be the proximate cause as well as cause in fact of the plaintiff's injuries).

2. *In pari delicto* means "in equal fault" and is a common law doctrine which bars a plaintiff's recovery due to his own wrongful conduct. This

defense is grounded on two premises: "first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 2626–27, 86 L.Ed.2d 215 (1985) (holding that *in pari delicto* not available defense for securities violations unless plaintiff bears equal responsibility for violation). *See also Sullivan v. National Football League*, 34 F.3d 1091 (1st Cir.1994), *cert. denied*, ─── U.S. ───, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995).

discourage criminal acts and to compensate victims. This divergence of policy reasons, renders the Plaintiff's analogy unpersuasive. Permitting the plaintiff to recover in this action would, as demonstrated hereafter, encourage crime and would certainly not compensate victims, a purpose not attributed to Congress.

### D. *Allowing Plaintiffs To Recover Would Subvert the Purpose and Policy of the RICO Act*

■ Allowing wrongdoers, such as the plaintiffs, to recover treble damages under RICO would subvert the twofold purpose of that act, to eliminate the economic incentives driving organized crime and to compensate the innocent victim. Such a result would provide no incentive for those approached by public officials for illegal payments to report such activity to law enforcement. Persons, such as the plaintiffs, could engage in bribery of public officials with full knowledge that if the bribery scheme (viewed as an effort to expedite official approval) broke down for whatever reason, they could seek a treble return on their illicit, but failed investment, from those with whom they once illegally dealt. It would be a no loss situation for criminal activity. It would be a pay now and recover later deal.

Instead of supplying innocent victims of organized crime with compensation, the civil remedies provided by the RICO Act would become *de facto* an insurance windfall for those who willingly engage in illegitimate schemes. Moreover, in this reading of the act, the Court heeds the congressional admonition that RICO be "liberally construed to effectuate its remedial purposes." RICO, s. 904(a), 84 Stat. 947 (1970). It is the plaintiffs' construction that would, in the end, turn the purpose of the act on its head by rewarding criminal wrongdoers and actually inciting criminal activity through an economic incentive of treble damages.

■ Such a result is contrary to the intent of Congress and the policy of the act and thus cannot be permitted.

### E. *Plaintiff's Section 1983 Claim*

Count III avers that defendants aRusso, DeConte, Izzo, Zanni, Iannazzi and the Town of Johnston were acting under the color of state authority and municipal practice and deprived the plaintiffs of property and rights in violation of 42 U.S.C. § 1983.

■ Section 1983 imposes liability on any person who acting under color of state law, deprives another rights or privileges guaranteed under the Constitution or laws of the United States. 42 U.S.C. § 1983. Municipalities may be considered "persons" under the law. *Monell v. City of New York Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611. "[T]he constitutional deprivation must have its origin in what can fairly be said to be a policy of a municipality." *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 637 (11th Cir.1991) (finding no § 1983 liability for town due to mayor's bribery).

■ Generally, a plaintiff must show two predicates in a § 1983 claim against a municipality: (1) that the policy was so well settled and widespread that the policy-making officials had actual or constructive knowledge of it and yet did nothing; and (2) the custom or policy was the cause of, or moving force behind, plaintiffs' constitutional deprivation. *Bordanaro v. McLeod,* 871 F.2d 1151, 1156 (1st Cir.1989). In the facts alleged, there is no evidence that the Town of Johnston had any policy endorsing or advocating extortion and the acceptance of bribes by town officials.

It may be argued that Mayor aRusso's actions, or acquiescence, constituted a town policy under which a plaintiff could recover. "[A]n unconstitutional policy or custom may be inferred from a single decision or act ... the isolated action must be taken by a municipal official with 'final policy-making authority' in the relevant area of the city's business." *Rodriquez v. Furtado,* 771 F.Supp. 1245, 1257 (D.Mass.1991) (internal citations omitted), *citing, City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). In the present state of this action, there is no indication in the record of the extent of the Mayor's authority in the

Town of Johnston. *See Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633 (11th Cir. 1991). The extent of the Mayor's authority remains a fact in issue.

Even assuming *arguendo* that there was a de facto municipal policy of extortion promulgated by aRusso and perpetrated by the other named defendants, the plaintiffs cannot succeed in their § 1983 claim because the alleged policy is not the cause of any constitutional harm.

 There must be a "direct causal link" between a municipal policy or custom and the alleged constitutional violation to find any § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989). *See also Chaudhry v. Prince George's County, MD*, 626 F.Supp. 448, 453 (D.Md.1985). Yet in this case, the "causal link" or "moving force" behind any perceived constitutional violations is the plaintiffs' own actions, that is their continual, voluntary payment of bribes to the defendants. Simply said, any substantive or procedural deprivations are the fault of the plaintiffs. Perhaps a bribery demand by municipal officials in order to facilitate zoning, permits, and the like, deprives a citizen of constitutional due process rights; however, once payment is made the citizen becomes the "causal link" and essentially waives any future right to protest, using 42 U.S.C. § 1983 as a vehicle.

Because the plaintiffs cannot provide any "moving force" or "causal link" other than their active complicity, there is not sufficient causation to sustain a § 1983 claim. Defendants' Motion to Dismiss Count III is granted.

**F.** *Plaintiff's State Law Claims*

The state law claims in Count IV–VI, Rhode Island RICO statutes §§ 7–15–2, 7–15–4 and R.I.G.L. § 9–1–2, are dismissed for lack of supplemental jurisdiction. *See* Judicial Improvements Act of 1990, 28 U.S.C. § 1367(c).

**G.** *Rule 11 Sanctions*

Rule 11 sanctions may be imposed when an attorney presents a claim or files an action "[not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b). The conduct in this case does not warrant Rule 11 sanctions. The Magistrate's Report and Recommendation is not adopted with regard to sanctions.

### CONCLUSION

For the reasons stated, the Report and Recommendation of the Magistrate Judge is adopted as stated in this opinion. The complaint is hereby dismissed as to all defendants.