USCA1 Opinion

 

 October 11, 1996 United States Court of Appeals For the First Circuit ____________________ No. 95-2107 ROMA CONSTRUCTION COMPANY AND PETER ZANNI, Plaintiffs, Appellants, v. RALPH A. ARUSSO, ET AL., Defendants, Appellees. ____________________ ERRATA SHEET ERRATA SHEET The concurring opinion by Judge Lynch in the above-captioned case, issued on September 27, 1996, is corrected as follows: On page 36, line 3: insert "in" before "stating" On page 36, footnote 16: change "footnote 7 supra" to "footnote 14 _____ supra" _____ On page 38, line 6: insert "that" after "likely" On page 40, line 9: change "operate" to "have operated" On page 42, line 8: change "supra footnote 10" to "supra footnote 17" _____ _____ UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2107 ROMA CONSTRUCTION COMPANY AND PETER ZANNI, Plaintiffs - Appellants, v. RALPH R. ARUSSO, ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Cyr and Lynch, Circuit Judges. ______________ _____________________ G. Robert Blakey, with whom Ina P. Schiff, Henry F. Spaloss _________________ ______________ ________________ and Spaloss & Rosson were on brief for appellants. ________________ Kathleen M. Powers, with whom Marc DeSisto and DeSisto Law ____________________ _____________ ___________ Offices were on brief for appellee Town of Johnston. Samuel D. _______ __________ Zurier, with whom Julius C. Michaelson and Michaelson & Michaelson ______ _____________________ ________________________ were on brief for appellees aRusso, et al.  ____________________ September 27, 1996 ____________________ TORRUELLA, Chief Judge. Plaintiffs-Appellants Roma TORRUELLA, Chief Judge. ____________ Construction Co, Inc. ("Roma") and Peter Zanni ("Peter Zanni") (collectively, "the plaintiffs"), challenge the district court's dismissal of their claims against Defendants-Appellees Mayor Ralph R. aRusso ("aRusso"), Councilman Benjamin Zanni ("Benjamin Zanni"), Domenic DeConte, Vincent Iannazi, Anthony Izzo, et al. ______ (collectively, "the individual defendants"), and the Town of Johnston, Rhode Island ("the Town") (together with the individual defendants, "the defendants"). Specifically, the district court granted judgment on the pleadings regarding: (1) Roma's racketeering claims against the individual defendants and the Town under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1964(a), and R.I. Gen. Laws 7-15-1 et __ seq. ("state RICO"); and (2) Roma's civil rights claims against ____ the individual defendants and the Town under 42 U.S.C. 1983. Roma also challenges the district court's decision to deny the pro hac vice admission of attorney G. Robert Blakey ("Blakey"). ____________ For the following reasons, we reverse the dismissal of the RICO, state RICO and civil rights claims, reverse the district court's decision not to admit Blakey, and we remand for further proceedings in accordance with this opinion. I. BACKGROUND I. BACKGROUND We review dismissals pursuant to Fed. R. Civ. P. 12(b)(6) under the rubric that all reasonable inferences from properly pleaded facts are to be drawn in the plaintiffs' favor. P rez-Ruiz v. Crespo-Guill n, 25 F.3d 40, 42 (1st Cir. 1994); __________ ______________ -2- Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. _________________ _________________ 1989). Drawing all reasonable inferences for the plaintiffs, the tale proceeds as follows. The plaintiffs Peter Zanni and Roma entered into a real estate development venture with Harry and Russell DePetrillo ("the DePetrillos"). Unknown to the plaintiffs, the DePetrillos had entered into an arrangement with the alleged de facto government of the Town, with aRusso as "the Boss," under which payments would be made to this enterprise in order to obtain necessary approvals. After the DePetrillos sold their share, Peter Zanni was informed of this preexisting deal, and was warned that his project was "dead" if he did not make payments. Having invested heavily in the project, and reasonably believing that he was dealing with a racketeering enterprise that had extorted and stolen for years during its control of the Town, Peter Zanni paid up. He continued paying for three years, until he was able to sell his share of the development. He then informed the FBI, and cooperated with its investigation and later with prosecutions of official corruption in the Town. Peter Zanni and Roma brought federal and state civil racketeering claims and federal civil rights claims, charging that they were injured by the conduct of aRusso and his fellow individual defendants, as well as the Town. The district court dismissed these charges on the grounds that the plaintiffs' own conduct rendered them unable to maintain standing to press their claims. The plaintiffs appeal the dismissals of their -3- racketeering1 and civil rights claims, as well as the district court's decision to deny the pro hac vice admission of their _____________ desired counsel, G. Robert Blakey ("Blakey"). II. DISCUSSION II. DISCUSSION We address first the plaintiffs' challenge to the dismissals of their causes of action, and then confront their appeal of the district court's decision to deny admission to Blakey. A. Causes of Action A. Causes of Action After setting forth the applicable standard of review, we turn first to the plaintiffs' challenge to the district court's dismissal of their racketeering claims. We then shift to the issue of the plaintiffs' section 1983 claims. 1. Standard of Review 1. Standard of Review Upon considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the district court should not grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts. Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 746 ___________________ ______________________ (1976); Gonz lez-Bernal v. United States, 907 F.2d 246, 248 (1st _______________ _____________ Cir. 1990). We review under the same standard, Holt Civic Club ________________ v. City of Tuscaloosa, 439 U.S. 60, 66 (1978). __________________  ____________________ 1 At oral argument, the plaintiffs stated that, on appeal, they did not wish to challenge the district court's dismissal of their racketeering claims against the Town. Plaintiffs also stipulated that they would not attempt to assert such claims against the Town in the future. Accordingly, vis-a-vis the Town, the only damage claims we address are those pursuant to section 1983. -4- 2. The Racketeering Claims 2. The Racketeering Claims RICO creates a civil remedy for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. 1964(c). Subsection (c) of section 1962, in turn, declares that it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Id.  ___ 1962(c). An "enterprise" is defined to include "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Id. 1961(4). "Racketeering activity" includes ___ any one of a number of enumerated criminal acts indictable under federal or state law. See id. 1961(1). A "'pattern of ___ ___ racketeering activity' requires at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." Id. 1961(5). ___ The district court dismissed the plaintiffs' civil RICO claims on the ground that, by their own pleadings, plaintiffs were not innocent victims and therefore could not maintain civil RICO standing. The district court found support for the proposition that only innocent victims could collect damages via civil RICO in the legislative history of the provision. See ___ -5- Organized Crime Control: Hearings on S. 30 Before the Subcomm. _________________________________________________________________ No. 5 of the House Committee on the Judiciary, 91st Cong., 2d. _______________________________________________ Sess. (1970) (stating, in the Act's "Findings and Purpose," that "Congress finds that . . . organized crime activity in the United States harms innocent investors and competing organizations"); 116 Cong. Rec. H35,346-47 (Oct. 7, 1970) (statement of Rep. Steiger, the private civil remedy provision's sponsor) ("It is the intent of this body, I am certain, to see that innocent parties who are the victims of organized crime have a right to obtain proper redress."). The district court's reasoning can be better delineated in conjunction with a recitation of plaintiffs' claims. Drawing inferences in favor of the plaintiffs, their pleadings suggest the following situation. The plaintiffs joined the DePetrillos in a real estate venture, unaware that the DePetrillos had entered into a scheme in which regulatory approvals had already been granted in exchange for the DePetrillos' payment of $10,000 to aRusso and his purported associates. The plaintiffs were similarly unaware that the DePetrillos had agreed to pay an additional $40,000. Several years later, defendant Councilman Benjamin Zanni approached them for the purported "balance due." As the district court emphasized, the plaintiffs then faced a dilemma. They could refuse to pay, jeopardizing their $2 million investment in the project, and as the district court suggested was their obligation, go immediately to the authorities. Or, they could submit to this extortion to protect their investment. They chose -6- the latter route. The plaintiffs state that they complied with all rules and regulations, and did not seek preferential treatment, but paid to avoid threatened adverse consequences. Specifically, the plaintiffs point to Benjamin Zanni's alleged statement to Plaintiff Peter Zanni that the venture was "dead" unless the balance was paid. Three years later, after they sold their partnership interests in the venture, the plaintiffs contacted the FBI, and assisted agents in a sting operation. Looking at these contentions, one reasonable conclusion is that the plaintiffs made these payments without any intent or desire to subvert governmental processes, but felt compelled to pay to protect their substantial investment in the venture, and did not contact the FBI until they had mitigated risks to their investment. However, the district court concluded that, even under this favorable view of the plaintiffs' conduct they could not be considered innocent parties, and so could not, according to the district court's interpretation of RICO standing, maintain a civil RICO claim. The district court concluded that, since the plaintiffs' own pleadings indicate that they paid $40,000 to the individual defendants to assure timely processing of permits and approvals necessary for their project, the plaintiffs were "neither innocent nor victims." Roma Constr. Co. v. aRusso, 906 ________________ ______ F. Supp. 78, 82 (D.R.I. 1995). The plaintiffs challenge the district court's dismissal of their civil RICO claims on the pleadings. Plaintiffs dispute that there is any "innocent party" requirement under RICO. In -7- the alternative, the plaintiffs contend that, even assuming such an "innocent party" requirement, the district court erred as a matter of law in concluding, that even taking the most favorable view of the plaintiffs' pleadings, they were necessarily not "innocent parties." Although the district court spoke of the "innocent party" requirement as one of "standing," it appears to have also considered its "innocent party" requirement as being in the nature of an affirmative defense which could be determined at the pleadings stage. The district court analogized to antitrust cases under the Clayton Act in which an "equal involvement" defense is recognized. See Bateman Eichler, Hill Richards Inc. ___ ____________________________________ v. Berner, 472 U.S. 299, 310-11 (1985); Perma Life Mufflers v. ______ ____________________ International Parts Corp., 392 U.S. 134 (1968). Whether or not _________________________ there exists such an "innocent party" requirement is a question of first impression in this circuit and, indeed, we are not aware of any cases anywhere that adopt such a requirement. We need not, however, decide whether or to what extent RICO imposes an "innocent party" limitation, or whether any such requirement might take the form of a standing requirement or an affirmative defense, because we conclude that the district court erred in finding that plaintiffs could prove no set of facts which would show their nonculpability under all potentially applicable criminal statutes.2  ____________________ 2 In deciding not to address the broader issues discussed in the concurring opinion, we need not necessarily quarrel with our respected colleague's analysis. Concededly, dismissal of the complaint based on appellees' assertion of a fact-intensive "equal involvement" defense would be inappropriate on the -8- Our analysis commences with an examination of the standards under which the district court evaluated plaintiffs' behavior. In deciding that such payments, even if coerced, forced it to conclude that the plaintiffs were not innocent victims, the district court cited two authorities. See Roma ___ ____ Constr. Co., 906 F. Supp. at 81-82 (citing R.I. Gen. Laws 11-7- ___________ 4 (1994) and Model Penal Code 240.1 commentary at 41 (1980)). Initially, the district court noted that Rhode Island General Law 11-7-4 states that [n]o person shall corruptly give . . . any gift or valuable consideration to . . . any public official as an inducement or reward for doing or forebearing to do . . . any act in relation to the business of . . . the state, city or town of which he or she is an official. R.I. Gen. Laws 11-7-4 (1994). The statutory language does not address the question of whether one who pays due to coercion is an innocent victim. The district court did not refer to, and we fail to find, any Rhode Island authority for direction on this point. Rather, the district court drew on the commentary to  ____________________ undeveloped record presently before the court. The concurring opinion hypothesizes that the substance of any such defense would be informed by preexisting federal statutes embodying comparable defenses. By contrast, the district court's dismissal depends entirely on the existence, vel non, of either an absolute ___ ___ innocent-victim "standing" requirement or a law-based in pari __ ____ delicto defense, each of which, by its very nature, is more _______ readily susceptible to summary disposition than a fact-intensive "equal involvement" defense. Thus we caution that nothing we have said is meant to suggest that Congress intended to create either such a "standing" requirement or an in pari delicto __ ____ _______ defense. -9- the Model Penal Code's definition of bribery to conclude that the plaintiffs' payments, even if construed to be the product of coercion, constituted illegal bribery. See Roma Constr. Co., 906 ___ ________________ F. Supp. at 81. The cited commentary to section 240.1 of the Model Penal Code states that  [a] private citizen who responds to an official's threat of adverse action by paying money to secure more favorable treatment evidences thereby a willingness to subvert the legitimate processes of government . . . . Such conduct constitutes a degree of cooperation in the undermining of governmental integrity that is inconsistent with the complete exoneration from criminal liability.  Model Penal Code 240.1 commentary at 41 (1980). The district court thus concluded that since even the interpretation of the pleadings that most favors the plaintiffs requires a determination that plaintiffs capitulated to official threats of adverse action, they were not "innocent parties." Taken together with its reading of the legislative history that RICO was intended to protect "innocent parties" and with its assessment of public policy in the form of "economic incentives," the district court proceeded to dismiss the plaintiffs' claims on the pleadings. Roma Constr. Co., 906 F. Supp. at 83. ________________ The district court thus ultimately relied on the policy concerns it understood to be addressed in the Model Penal Code. Assuming for the sake of argument that lack of "innocence" is an issue in a civil RICO claim, the question must be addressed whether the district court considered the correct sources for the definition of "innocence." We believe that where racketeering -10- statutes provide for a civil remedy, at the very least we should deny RICO remedies only with reference to statutes or case law, not on policy grounds. See generally Sedima, S.P.R.L. v. Imrex _____________ _________________ _____ Co., 473 U.S. 479, 498-500 (1985) (rejecting, due to RICO ___ statutory language and legislative history that counsel a broad interpretation, a court of appeals-imposed RICO standing limitation as inappropriate judicial "statutory amendment" even though the Court shared the lower court's concerns about "extraordinary" uses of RICO). As a result, we turn to the question of whether the issue presented is properly one of federal common law for which the Model Penal Code might prove a legitimate source of uniform legal principles, or one to which we would apply Rhode Island law. The Supreme Court has recognized that federal courts have the power to formulate federal common law when a federal rule of decision is necessary to protect "uniquely federal interests" or when Congress has given the courts the power to develop substantive law. Texas Indus. v. Radcliff Materials, _____________ ___________________ Inc., 451 U.S. 630, 640 (citing Banco Nacional de Cuba v. ____ ________________________ Sabbatino, 376 U.S. 398, 426 (1964) and Wheeldin v. Wheeler, 373 _________ ________ _______ U.S. 647, 652 (1963)). Areas of "uniquely federal interests" include areas such as "the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." Id. at 641. Several courts have ___ concluded that RICO does not implicate "uniquely federal -11- interests," since "[r]egulation of organized crime does not fall within the above categories and, although RICO is federal legislation, individual states also take active roles in fighting organized crime and providing redress for its injured citizens." Friedman v. Hartmann, 787 F. Supp. 411, 417 (S.D.N.Y. 1992); ________ ________ Minpeco v. Conticommodity Servs. Inc., 677 F. Supp. 151, 155 _______ ___________________________ (S.D.N.Y. 1988) ("RICO, although reflecting Congress' intent in providing creative federal responses to the problems of organized crime, does not address a uniquely federal interest."); Seminole ________ Electric v. Tanner, 635 F. Supp. 582, 584 (M.D. Fla. 1986). We ________ ______ agree that RICO does not concern uniquely federal interests. As a result, we inquire whether the question presented -- is RICO standing limited to "innocent" parties? -- falls within an area in which Congress has given the courts the power to develop substantive law. Texas Industries, 451 U.S. at 640. ________________ The district court, in effect, decided that the issue of federal civil RICO standing and its relationship to a party's innocence was properly decided as a matter of uniform federal common law.  The district court looked to uniform model codes and emergent trends as guides for fashioning a federal common law rule which would foster what it perceived as important federal interests underlying civil RICO. The district court suggested that the Congress that enacted RICO in 1970, which referred obliquely in legislative history to the purpose of aiding "innocent parties," would be cognizant of the emerging Model Penal Code trend in the law of bribery, presupposing that Congress gave courts the power -12- to develop substantive law regarding this issue. We find no evidence of any congressional intent that the "innocence" of a RICO "victim" should be made to turn on a uniform federal common law rule. Neither party cites, and we have been unable to find, statutory provisions or legislative history evidencing such a grant of authority. While there has been a great deal of commentary regarding the appropriate scope of federal common law, see, e.g., Morgan v. South Bend Community ___ ____ ______ ____________________ Sch. Corp., 797 F.2d 471, 475 (7th Cir. 1986) (collecting ___________ commentary), it is not disputed that "when the federal government is not a party to the litigation" -- as is the case here -- "neutral state rules that do not undermine federal interests should be applied unless some statute (or the Constitution) authorizes the federal court[s] to create a rule of federal law," id. at 475 (citing Miree v. DeKalb County, 433 U.S. 25, 28-33 ___ _____ _____________ (1977)). More specifically, the Supreme Court has rejected a judicially created restriction on RICO standing, despite voicing agreement with the policy concerns that drove the limitation in question. See Sedima, 473 U.S. at 498-500. As a result, ___ ______ assuming -- without concluding, as we ultimately find the plaintiffs to be innocent parties -- that RICO standing is limited to "innocent parties," we believe that the question of a party's innocence must be resolved via the incorporation of state law into the federal law of RICO standing in order to answer the instant question. We recognize that the incorporation of state law into federal law implicates a serious problem of uniformity -13- of federal law throughout the states. However, since RICO does not implicate uniquely federal interests and since there is a lack of support for the view that Congress authorized the federal courts to generate federal common law in this area, the incorporation of state law is the preferable alternative. See, ___ e.g., In re Sunrise Sec. Litig., 916 F.2d 874, 881 (3d Cir. 1990) ____ _________________________ (finding it appropriate "to look to state law for guidance in deciding whether plaintiffs have stated a nonderivative [shareholders'] claim, [enabling them to maintain standing,] rather than to fashion federal common law"); Leach v. Federal _____ _______ Deposit Ins. Corp., 860 F.2d 1266, 1274 (5th Cir. 1988) ____________________ (concluding that "the incorporation of state law to determine whether a shareholder has been injured under RICO is preferable to generating federal common law" despite the possibility of "a serious problem of uniformity of federal law throughout the states"); cf. In re Bieter Co., 16 F.3d 929, 935 (8th Cir. 1994) ___ ________________ (applying federal common law of attorney-client privilege to a civil RICO action, where such application is authorized by Supreme Court Standard 503 and Supreme Court case law). As a result, in assessing plaintiffs' innocence, we must apply Rhode Island bribery law. The district court concluded that the pleadings rendered the plaintiffs "not innocent" vis-a-vis charges of bribery. See Roma Constr. Co., ___ ________________ 906 F. Supp. at 83 (stating that to allow the plaintiffs standing might result in a rule under which "[p]ersons, such as the plaintiffs, could engage in bribery of public officials with full -14- knowledge that if the bribery scheme . . . broke down, they could seek a treble return on their illicit, but failed investment"). Turning to Rhode Island law, however, this conclusion cannot be reconciled with Rhode Island's bribery statute. The district court relied on the Model Penal Code's bribery provision, which states that  [a] person is guilty of bribery, a felony of the third degree, if he offers, confers, or agrees to confer upon another, or solicits, accepts or agrees to accept from another: (1) any pecuniary benefit as consideration for the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official, or voter; or (2) any benefit as consideration for the recipient's decision, vote, recommendation or other exercise of official discretion in a judicial or administrative proceeding; or (3) any benefit as consideration for a violation of a known legal duty as a public servant or party official.  Model Penal Code 240.1 ("Bribery in Official and Political Matters"). While the district court may have rightly concluded that the plaintiffs are not innocent of bribery under the Model Penal Code, we do not think that this fact counsels for the same conclusion under Rhode Island law, since the Code's own commentaries expressly recognize that the Code does not follow Rhode Island law. Part II Model Penal Code and Commentaries 6, n.2 (1980). Moreover, unlike Rhode Island's statute, the Model Penal Code provision contains no requirement that a payor act -15- "corruptly." Compare R.I. Gen. Laws 11-7-4 ("[n]o person shall _______ corruptly give") (emphasis added) with Model Penal Code 240.1 _________ ____ ("[a] person is guilty of bribery . . . if he offers, confers, or agrees to confer upon another").3  The plaintiffs argue that the Model Penal Code's omission of the term "corruptly" is no mere semantic distinction; rather, it represents a shift from the common law in expanding the scope of bribery sanctions for payors to situations in which the payor does not act corruptly. See generally James Lindgren, _____________ The Elusive Distinction Between Bribery and Extortion: From the _________________________________________________________________ Common Law to the Hobbs Act, 35 U.C.L.A. L. Rev. 815, 824 n.41 ____________________________ (1988). We agree. "[A] statutory term is generally presumed to have its common-law meaning." Evans v. United States, 504 U.S. _____ _____________ 255, 259 (1992); United States v. Aguilar, ___ U.S. ___, ___, 115 _____________ _______ S. Ct. 2357, 2370 (1995) (Scalia, J., dissenting) (stating that  ____________________ 3 The federal bribery and gratuity statute, 18 U.S.C. 201, does not, by its terms, apply to local officials such as those involved in the instant case, 18 U.S.C. 201(a)(1), although cases have held the statute applicable where local officials administer federally funded programs. See United States v. ___ _____________ Vel zquez, 847 F.2d 140, 142 (4th Cir. 1988) (concluding deputy _________ sheriff was a "public official" with respect to federal bribery statute, where county jail was under contract with federal government to supervise federal prisoners); United States v. ______________ Gallegos, 510 F. Supp. 1112, 1114 (D.N.M. 1981) (ruling state ________ government employee who worked under direct supervision of federal official in administration of federal grant program was "public official" for purpose of federal bribery statute). But ___ see United States v. Del Toro, 513 F.2d 656, 662 (2d Cir.) ___ ______________ _________ (concluding city administrator who was city employee was not a public official even though he administered model cities program, for which the federal government provided 100% funding), cert. _____ denied, 423 U.S. 826 (1975). No allegation has been made that ______ the defendants' bribery/extortion scheme was in connection with a federal contract or federal funding. -16- "the term 'corruptly' in criminal laws has a long-standing and well-accepted meaning"). The term "corruptly" adds the element of corrupt intent to the crime of bribery. See generally id. at _____________ ___ 2370 (endorsing the proposition that "[a]n act is done corruptly if it's done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method, with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person"); H.R. 748, 87th Cong., 1st Sess. 18 (1961) (reporting section 201 federal bribery statute) (stating that "[t]he word 'corruptly' which is also used in obstruction of justice statutes (18 U.S.C. 1503- 1505) means with wrongful or dishonest intent"). We agree that the term "corruptly" indicates a specific corrupt intent that differs from the Model Penal Code commentary's condemnation of an involuntary payor's conduct as manifesting "a degree of cooperation in the undermining of governmental integrity that is inconsistent with the complete exoneration from criminal liability." Model Penal Code 240.1 commentary at 41. The mens rea implicated by "corruptly" _________ concerns the intention to obtain ill-gotten gain; by contrast, the Model Penal Code converts the lack of willpower to stand up to abusive authority into a degree of culpability. See Lindgren, ___ supra at 824 n.41 (stating that "[t]he Model Penal Code has taken _____ the questionable approach of making it bribery to capitulate to an extortion threat"). Admittedly, to delve into questions of what is done "corruptly" is more difficult than to apply the -17- Model Penal Code's standard. But as one commentator has noted, "[t]he best that can be said for the [Model Penal Code's bribery] provision is that it makes difficult questions of crime definition easy, but this clarity is bought at the cost of ignoring the settled law of centuries and current notions of right and wrong." Id. ___ As a result, we must apply the common law standard of specific corrupt intent, as included in the Rhode Island statute, to the plaintiffs' story. The plaintiffs claim that they paid only to avoid adverse consequences, that their properties met the standards required for the approvals in question, and that they received nothing beyond fair treatment from payees. Examining these claims with an eye towards detecting corrupt intent, we think that a set of facts could be found from which it could be reasonably inferred that the plaintiffs did not make payments voluntarily to bring about an unlawful result, with the hope of a gain for themselves, but rather that they were the innocent victims of a criminal enterprise. As a result, we conclude that Rhode Island's bribery statute does not foreclose a conclusion that they are "innocent parties." Citing United States v. Mariano, 983 F.2d 1150 (1st _____________ _______ Cir. 1993) and United States v. Hathaway, 534 F.2d 386 (1st Cir. _____________ ________ 1976), the defendants assert that we have previously held that "bribery and extortion are not mutually exclusive concepts," Mariano, 983 F.2d at 1159; Hathaway, 534 F.2d at 395. However, _______ ________ we think these cases unavailing for three reasons. First, -18- neither deals with Rhode Island's bribery statute. Second, even if these cases compelled us to conclude that bribery and coercive extortion are not mutually exclusive concepts under the Rhodes Island statute, in the instant case a genuine issue of material fact remains as to the plaintiffs' intent in making payments, based on a reading of the pleadings in the best light for the plaintiffs. Third, and finally, Mariano, at least, involved two _______ defendants who pled guilty to "corruptly giv[ing] . . . [some]thing of value" to local government officials "with intent to influence or reward" those officials, where the officials were part of a governmental unit that received substantial federal subsidies, in violation of 18 U.S.C. 666(a)(2). Mariano, 983 _______ F.2d at 1153. On appeal, both defendants challenged the district court's application of the sentencing guideline relating to bribery rather than the guideline appropriate to providing an illegal gratuity. Id. at 1159. They argued that "they were ___ victims, not perpetrators, of an extortionate scheme, and that they received nothing extra in return." Id. Applying the ___ clearly erroneous standard of review, we concluded that the "guideline analogy chosen by the district court was well within its purview," noting that "when there are two plausible views of the record, the sentencing court's adoption of one such view cannot be clearly erroneous." Id. at 1160; see United States v. ___ ___ _____________ St. Cyr, 977 F.2d 698, 706 (1st Cir. 1992). In particular, we _______ noted that the Mariano defendants could not "expect the courts to _______ -19- swallow their tale uncritically." Mariano, 983 F.2d at 1160. _______ In this case, the district court improperly dismissed the plaintiffs' case before it had a chance to swallow, let alone digest, their story. At this stage of the game, since one plausible view is that the plaintiffs were in fact victims of coercive extortion, and since they have not pled guilty to a crime that involves "corrupt intent" as an element as we noted of the defendants in Mariano, 983 F.2d at 1159, we conclude that the _______ plaintiffs in the instant case may press on with their claim. As a result, we reverse the district court's dismissal of the plaintiffs' federal RICO claims. Accordingly, we also reverse the district court's dismissal for lack of supplemental jurisdiction, see 28 U.S.C. 1367, of state RICO claims pursuant ___ to R.I. Gen. Laws 7-15-2, 7-15-3 and 9-1-2.4 We remand both federal and state RICO claims for further proceedings in accordance with this opinion.   ____________________ 4 Similar to federal RICO, R.I. Gen. Laws 7-15-2(c) provides that [i]t shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity or collection of an unlawful debt. Rhode Island law also uses broad standing language that resembles that of 18 U.S.C. 1964(c) in its provision for civil liability for racketeering offenses. See R.I. Gen. Laws 9-1-2 (stating ___ that "[w]henever any person shall suffer any injury . . . by __________ __________ reason of the commission of any crime or offense . . . he [or she] may recover his [or her] damages for such injury in a civil action against the offender") (emphasis added). -20- Because we conclude that even if RICO's civil remedies were limited to innocent parties, we would apply Rhode Island law to the question of the plaintiffs' innocence, and Rhode Island law compels a reversal of the district court's dismissal of their claims, we leave for a later time the question of whether those who are not innocent parties can be denied civil RICO remedies. 3. The Civil Rights Claim 3. The Civil Rights Claim The district court also dismissed the plaintiffs' claim that the individual defendants and the Town acted under color of state authority and municipal practice, and deprived the plaintiffs of property and rights in violation of 42 U.S.C.  1983. Section 1983 authorizes actions for equitable relief and/or damages against "[e]very person who under color of any . . . custom or usage, of any State or Territory . . . subjects or causes to be subjected any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C.  1983. Furthermore, those who commit actionable wrongs under that section "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding in redress." Id. ___ In construing the terms "custom" and "usage," the Supreme Court has instructed that  Congress included customs and usages [in section 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so -21- permanent and well settled as to constitute a "custom or usage" with the force of law. Monell v. Department of Social Servs. of New York, 436 U.S. 658, ______ ________________________________________ 691 (1978) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, _______ _________________ 167-68 (1970)); see Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st ___ _________ ______ Cir. 1989). Courts have set forth two requirements for maintaining a section 1983 action grounded upon an unconstitutional municipal custom. First, the custom or practice "must be attributable to the municipality." Id. at 1156. That is, "it must be so well- ___ settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Id. ___ Second, "the custom must have been the cause of and the moving force behind the deprivation of constitutional rights." Id. ___ The district court concluded that in the facts alleged, "there [was] no evidence that the Town [] had any policy endorsing or advocating extortion and the acceptance of bribes by town officials." Roma Constr. Co., 906 F. Supp. at 83. __________________ Furthermore, the district court went on to state that, even assuming "that there was a de facto municipal policy of extortion promulgated by aRusso and perpetrated by the other named defendants," the plaintiffs could not succeed in their section 1983 claim because the alleged policy was not the cause of any constitutional harm. Id. Noting that there must be a "direct ___ causal link" between a municipal policy or custom and the alleged -22- constitutional violation to find section 1983 liability, id. at ___ 84 (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)), _______________ ______ the district court concluded that "in this case, the 'causal link' or 'moving force' behind any perceived constitutional violations is the plaintiffs' . . . continual, voluntary payment of bribes to the defendants," id. ___ For the reasons we have stated in our discussion regarding bribery and coercive extortion, we think a finder of fact could reasonably infer that the plaintiffs' payments were made pursuant to coercive extortion, and thus did not necessarily constitute "voluntary payment of bribes" with corrupt intent. At this stage, we must resolve reasonable inferences in favor of the plaintiffs. Thus, we conclude that the plaintiffs could show a direct causal link between the defendants' coercive extortion and the plaintiffs' losses. As a result, we turn to the question of whether coercive extortion, if found, could be attributed to some de __ facto municipal policy. "An unconstitutional policy or custom _____ may be inferred from a single decision or act . . . [but] the isolated action must be taken by a municipal official with 'final policy-making authority' in the relevant area of the city's business." Rodr quez v. Furtado, 771 F. Supp. 1245, 1257 (D. _________ _______ Mass. 1991) (citations omitted). However, "[t]he fact that a particular official -- even a policymaking official -- has discretion in the exercise of a particular function does not, without more, give rise to municipal liability based on an -23- exercise of that discretion." Pembaur v. City of Cincinnati, 475 _______ __________________ U.S. 469, 481-82 (1986) (Brennan, J., plurality opinion). In their pleadings, the plaintiffs have alleged that aRusso as Mayor, Benjamin Zanni as a town councilman, and others operated a de facto government which controlled the Town for more ________ than a decade, routinely engaging in bribery, extortion, corruption and other unlawful activities. While a showing that aRusso acted illegally in the exercise of his discretion as Mayor might not by itself give rise to municipal liability, we think that under these pleadings, the plaintiffs could indeed prove a set of facts from which a trier of fact could infer an unconstitutional policy or custom with respect to the Town's government. For example, a fact finder could conclude that extortion of outsiders, businessmen, or developers, if proven, was "'the way things are done and have been done'" in the Town. See Kibbe v. City of Springfield, 777 F.2d 801, 806 (1st Cir. ___ _____ ____________________ 1985) (quoting Grandstaff v. City of Borger, 767 F.2d 161, 171 __________ _______________ (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987)), cert. _____________ _____ granted, 475 U.S. 1064 (1986), cert. dismissed, 480 U.S. 257 _______ _______________ (1987). As a result, we reverse the district court's dismissal of the plaintiffs' section 1983 claim on the pleadings, and we remand for further proceedings on their claim. B. Blakey's Pro Hac Vice Admission B. Blakey's Pro Hac Vice Admission ____________ The plaintiffs also appeal the district court's denial of admission pro hac vice of their attorney, G. Robert Blakey _____________ ("Blakey"). On May 15, 1995, the plaintiffs moved for Blakey's -24- admission pro hac vice. The district court denied the motion on ____________ June 2, 1995. On June 12, 1995, the plaintiffs moved for reconsideration of the court's order; the district court denied the motion for reconsideration on September 25, 1995. The district court articulated two grounds for denying Blakey's pro hac vice admission. First, the district court noted ____________ that a previous motion by the plaintiffs seeking the admission pro hac vice of another of their attorneys, Spaloss, had already _____________ been granted. Second, the district court expressed concern about the amount of attorney's fees being generated by the plaintiffs.5 The Supreme Court has recognized that "in many District Courts, the decision on whether to grant pro hac vice status to _____________ an out-of-state attorney is purely discretionary." Frazier v. _______ Heebe, 482 U.S. 641, 651 n.13 (1987). However, the plaintiffs _____ argue that the U.S. District Court for the District of Rhode Island is not one of those courts. Local Rule 5(c) of the District of Rhode Island provides in pertinent part that [a]ny attorney who is a member in good standing of the bar of the United States Supreme Court, of any other United States District court, or of the highest court of any state, shall on motion be ______________________ permitted to appear once in a calendar ____________________ year in a case or group of related cases in association with a member of the bar of this court who is actively engaged in the practice of law within the State of Rhode Island . . . . D.R.I. R. 5(c) (emphasis added). The plaintiffs argue that in  ____________________ 5 A successful civil RICO plaintiff may collect reasonable attorney's fees in addition to treble damages. 18 U.S.C. 1964(c).  -25- contrast to the Local Rules of the other districts in this circuit, Rhode Island's rule does not by its terms provide for the court's discretion. Compare D.R.I. R. 5(c) ("shall on motion _______ be permitted to appear") with D. Me. R. 3(d)(1) ("may at the ____ discretion of the Court . . . be permitted to practice"); D. Mass. R. 6(b) ("may appear and practice in this court in a particular case by leave granted in the discretion of the court"); D.N.H. R. 5(b) ("may at the discretion of the court"); D.P.R. R. 204.2 ("may be permitted"). The plaintiffs assert that the District of Rhode Island has promulgated a rule under whose clear language pro hac vice admission is not discretionary. As a ____________ result, the plaintiffs claim, the district court erred as a matter of law in concluding that it had discretion to deny Blakey's pro hac vice admission, or alternatively, the district _____________ court abused whatever discretion it had. We do not consider the issue of whether this pro hac _______ vice rule, which may be nondiscretionary, nonetheless leaves some ____ discretion to deny admission. Even assuming that discretion existed, the district court's denial of such admission to Blakey was an abuse of that discretion. The district court's two articulated grounds simply cannot support its action. The district court stated that "[w]e already have one pro hac vice . ____________ . . [and we're] not going to take more than one on a case." We may take judicial notice of the fact that the District of Rhode Island has permitted multiple pro hac vice admissions in ______________ proceedings that were contemporaneous with the instant case. See ___ -26- Cohen v. Brown Univ., 879 F. Supp. 185 (D.R.I. 1995). _____ _____________ Furthermore, regarding expense, in the instant case defendants were represented by more than ten attorneys, the plaintiffs by two; additionally, if the court was concerned about excessive attorney fees, it could have addressed that matter later, if and when the plaintiffs submitted their attorney fee application. While it may be that Blakey has no right to pro hac _______ vice admission, see Leis v. Flynt, 439 U.S. 438, 452 (1979) ____ ___ ____ _____ (holding that an attorney does not have a federal right to state ________ _____ court pro hac vice admission), the rights of the plaintiffs are ____________ another matter. Particularly here, where the plaintiffs identified specific, logical reasons for their request,6 we conclude that the district court's decision, based on criteria that are not set forth in writing, that do not reasonably support its action, and that do not appear to respond to any general policy of the District of Rhode Island, amounts to an abuse of discretion.  CONCLUSION CONCLUSION As a result of the foregoing, the judgment of the district court is reversed. Appellants are allowed costs. reversed. ________ ____________________________  ____________________ 6 See, e.g., Kevin Roddy, RICO in Business and Commercial ___ ____ __________________________________ Litigation (1993) (describing Blakey as "the acknowledged author" __________ of the federal RICO statute and of "excellent" commentaries on RICO application). -27- Concurrence Follows -28- LYNCH, Circuit Judge, concurring. At issue is whether LYNCH, Circuit Judge, concurring. _____________ the plaintiffs have stated a claim under Rule 12(b)(6), Fed. R. Civ. P.7 The plaintiffs' complaint cannot be dismissed "if relief could be granted under any set of facts that could be proved consistent with the allegations." NOW v. Scheidler, 114 ___ _________ S. Ct. 798, 803 (1994). The district court dismissed the claims because it imported into RICO a standing requirement that the plaintiffs must be "innocent victims." See Roma Constr. Co. v. ___ _________________ aRusso, 906 F. Supp. 78, 81 (D.R.I. 1995). The review by this ______ court of the dismissal is de novo. Aulson v. Blanchard, 83 F.3d ______ _________ 1, 3 (1st Cir. 1996). This ruling, one of law, was, I believe, in error. The question is, concededly, one of first impression here. Because I analyze the matter differently than does the majority, I write separately. The question of who has standing to bring actions under RICO is a matter of federal law. The pertinent provision of RICO provides: Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.  18 U.S.C. 1964(c). There is no qualification on the phrase "any person injured in his business or property" limiting the  ____________________ 7 At oral argument, plaintiffs stipulated that their RICO claim is not asserted against the town, but only against the individual defendants. -29- phrase to "innocent" persons. RICO defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. 1961(3). On the language of the statute, plaintiffs meet this definition.8 In general, the intent of Congress manifested in the text of the statute governs the issue of standing: In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of "a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." United States v. Turkette, 452 U.S. 576, 580 (1981) (quoting ______________ ________ Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. _______________________________ __________________ 102, 108 (1980)). The language of RICO should thus be the primary guide to determining Congressional intent. See Sedima ___ ______ S.P.R.L. v. Imrex Co., 473 U.S. 479, 495 n.13 (1985). Indeed, ________ _________ the Supreme Court has consistently adhered to the language of RICO in interpreting its meaning and rejected surplus requirements not found in the statutory language. See, e.g., ___ ____ Scheidler, 114 S. Ct. at 806 (holding that RICO does not require _________ an economic motive behind the racketeering activity); Reves v. _____ Ernst & Young, 507 U.S. 170, 177-79 (1993) (looking to statutory ______________ language to determine the scope of RICO liability for "conduct" or "participation"); Sedima, 473 U.S. at 488-92 (holding that ______ private actions under RICO do not require a criminal conviction  ____________________ 8 Of course, other questions about the parameters of RICO standing are not raised by this case, which concerns only whether there is an "innocent victim" requirement. -30- on the underlying predicate offenses); Turkette, 452 U.S. at 580- ________ 87 (holding that the term "enterprise" as used in RICO is not restricted to criminal enterprises); cf. Holmes v. Securities ___ ______ __________ Investor Protection Corp., 503 U.S. 258, 265-69 (1992) ____________________________ (construing the word "injury" to require proximate cause by reference to statutory history and judicial interpretation of same language in Clayton Act). Despite the lack of any "innocent victim" requirement in the statutory language, the district court relied upon an isolated statement in the legislative history to fashion a requirement that only "innocent victims" be allowed to sue. The district court's reliance on a snippet of legislative history, lifted out of context,9 to create an absolute standing bar to  ____________________ 9 The court relies on a statement by Representative Steiger on October 7, 1970, that "[i]t is the intent of this body, I am certain, to see that innocent parties who are the victims of organized crime have a right to obtain proper redress." 116 Cong. Rec. 35,346-47 (1970). That statement was made during debate over a proposed amendment, ultimately withdrawn, which would have authorized private injunctive relief. See Abrams, The ___ ___ Law of Civil RICO 1.4, at 30 (1991). The district court's __________________ characterization of the remarks as coming from "the sponsor of the provision that eventually created a private civil remedy" could cause a misapprehension. In fact, RICO originated in a bill filed in the Senate, S. 30. By October 7, 1970, the Judiciary Committee had already reported out that bill, which included "the RICO provision ultimately enacted as section 1964(c), which created a treble damage remedy." Id. at 30. The ___ debate in which Representative Steiger made the quoted remarks was over private injunctive relief. Further, Representative Steiger referred, in the very same remarks relied upon by the district court, to victims of "organized crime." Yet it was clear to both the House and the Senate that the reach of civil RICO extended well beyond organized crime. "Congress knew what it was doing when it adopted commodious language capable of extending beyond organized crime." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, ___________ __________________________ -31- anyone not "innocent," was inappropriate. "[E]ven if we were to read this statement to say what [defendants] say[] it means, it would not amount to more than background noise drowned out by the statutory language." Holmes, 503 U.S. at 269 n.15. This ______ selection from the legislative history cannot overcome the plain text of RICO, which is unambiguous. It represents "a rather thin reed upon which to base a requirement . . . neither expressed nor . . . fairly implied in the operative sections of [RICO]." Scheidler, 510 U.S. at 805. Even were there occasion to consider _________ the legislative history relied upon by the district court, it says only that the statute will protect innocent victims, not that the statute will deny standing to those who are not innocent victims. See Turkette, 452 U.S. at 591 (noting that "negative ___ ________ inference[s]" need not be drawn from positive statements in legislative history). The Supreme Court has emphasized the broad reach of RICO's language: "If the defendant engages in a pattern of racketeering activity . . . and the racketeering activities injure the plaintiff in his business or property, the plaintiff  ____________________ 246 (1989); see also Sedima, 473 U.S. at 499 ("Congress wanted to ________ ______ reach both 'legitimate' and 'illegitimate' enterprises. The former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences. The fact that 1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient reason for assuming that the provision is being misconstrued." (citation omitted)); Abrams, supra, 1.1, at 5 _____ ("RICO's name might suggest that the private cause of action reaches primarily racketeers and other organized crime figures. Developments since RICO's 1970 enactment, however, have laid firmly to rest any suggestion of limited reach."). -32- has a claim under 1964(c). There is no room in the statutory language for an additional . . . requirement." Sedima, 473 U.S. ______ at 495. There is nothing in the language of RICO which suggests that Congress intended to deny standing to plaintiffs who are alleged to have committed bribery or paid extortion, whether under coercion or not.  Standing involves three analytically distinct requirements: injury-in-fact, a causal connection between the injury and the conduct complained of, and whether the wrong may be redressed. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560- _____ _____________________ 61 (1992). All three elements of the standing inquiry are satisfied on the pleadings here. Plaintiffs have adequately alleged injury-in-fact (financial loss), a causal connection (defendants' corruptly demanding payments), and that the injury will be redressed by a favorable decision (availability of RICO damages). See Sedima, 473 U.S. at 496 (noting that RICO ___ ______ plaintiff has standing only if "he has been injured in his business or property by the conduct constituting the violation"); Libertad v. Welch, 53 F.3d 428, 436 (1st Cir. 1995). This is not ________ _____ a case where the plaintiffs attempt to assert the rights of others. Cf. Carter v. Berger, 777 F.2d 1173 (7th Cir. 1985) ___ ______ ______ (county, not individual taxpayers, may sue under RICO for bribery scheme resulting in underpayment of taxes). Accordingly, I would end the standing analysis there. In considering whether there is an "innocent victim" standing requirement, I doubt that Congress intended for the -33- federal courts to refer to and incorporate state law.10 The defendants argue that the innocent victim requirement is to be found in the distinction, found in some state laws, between bribery and coercive extortion. They buttress their argument by reference to provisions of the Model Penal Code. The matter of whether the activities in which these plaintiffs engaged fit within the category of bribery or of coercive extortion is, in my view, not relevant to the issue of standing.11 Although RICO references state law in its definition of "racketeering activity,"12 it makes no substantive distinction  ____________________ 10 Caselaw holding that minority shareholders suffer no injury to their property apart from the injury the corporation suffers and so have no standing to sue under RICO provides no comfort to defendants. Such caselaw does not support the principle that reference should be made to state law to determine the contours of any "innocent victim" defense. It is true that some decisions refer to state law to define property interests of shareholders as opposed to corporations to determine whether the former may bring a RICO action. See, e.g., Leach v. FDIC, 860 F.2d 1266 ___ ____ _____ ____ (5th Cir. 1988), cert. denied, 491 U.S. 905 (1989). Other _____________ caselaw, including that of this circuit, see Roeder v. Alpha ___ ______ _____ Indus., 814 F.2d 22, 29-30 (1st Cir. 1987), refers to general ______ principles of corporate law to hold that a shareholder may not sue under RICO to vindicate a duty owed to the corporation. See ___ Rand v. Anaconda Ericsson, Inc., 794 F.2d 843, 849 (2d Cir.), ____ ________________________ cert. denied, 479 U.S. 987 (1986); Warren v. Manufacturer's Nat'l ____________ ______ ____________________ Bank of Detroit, 759 F.2d 542, 545 (6th Cir. 1985); Abrams, _________________ supra, 3.3.6, at 147-52. In any event, the issue of whether _____ state law should be referenced in defining the term "property" is simply not present in this case. 11 If it were, then I would agree that on the facts pleaded it is impossible to draw the conclusion that this case involves exclusively bribery. 12 This reference to state law is in the context of RICO's definition of predicate offenses. From this, defendants would ________ infer a Congressional desire -- expressed nowhere in the statute -- to reference state law with respect to affirmative defenses as ________ well. -34- between "bribery" and "extortion." RICO defines "racketeering activity" in 18 U.S.C. 1961(1)(A) to mean, inter alia, "any act _____ ____ or threat involving . . . bribery [or] extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year." Thus, the federal statute recognizes, without distinction, acts "involving" either bribery or extortion as predicate offenses for purposes of RICO. Further, even in defining such a predicate offense, state law plays a limited role: The labels placed on a state statute do not determine whether that statute proscribes bribery for purposes of the RICO statute. Congress intended for "bribery" to be defined generically when it included bribery as a predicate act. H.R. Rep. No. 1549, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S. Code Cong. _________ __ & Admin. News 4007, 4032 ("State offenses are included by generic designation."). Thus, any statute that proscribes conduct which could be generically defined as bribery can be the basis for a predicate act. United States v. Garner, 837 F.2d 1404, 1418 (7th Cir. 1987), _____________ ______ cert. denied, 486 U.S. 1035 (1988); accord United States v. ____________ ______ ______________ Forsythe, 560 F.2d 1127, 1137 (3d Cir. 1977). Here, the ________ plaintiffs' complaint also alleges, in addition to the state law predicate offense, a predicate federal offense, violation of 18 U.S.C. 1951 (wrongful use of official authority to obstruct, delay, and effect commercial activity in interstate commerce). That statute also does not draw the distinction defendants urge. Nonetheless, standing issues aside, the question remains whether there is some form of requirement in RICO, which -35- may be tested on a motion to dismiss, that plaintiffs be innocent victims. At least two other possibilities emerge: that such a requirement is inherent in the cause of action or that it is an affirmative defense. To the extent that the existence of a cause of action is a matter analytically distinct from the issue of standing, see ___ Libertad, 53 F.3d at 438 n.5, a cause of action has been stated ________ here.13 There is nothing in the language of RICO which suggests that only innocent plaintiffs have a cause of action. See ___ Scheidler, 114 S. Ct. at 806 ("[T]he statutory language is _________ unambiguous and [the] legislative history [evidences] no such 'clearly expressed legislative intent to the contrary' that would warrant a different construction." (citation omitted)). Under the proximate causation test of Holmes, 503 U.S. at 268, there is ______ a cause of action stated.14 The damages alleged here on the  ____________________ 13 But cf. Sunstein, Standing and the Privatization of Public ________ ___________________________________________ Law, 88. Colum. L. Rev. 1432, 1433 (1988) (arguing that "[f]or ___ purposes of standing, the principal question should be whether Congress has created a cause of action"). 14 It may also be, as the district court suggested, see Roma, ___ ____ 906 F. Supp. at 82 n.1, that the plaintiffs' relative culpability may be considered in deciding, under Holmes, the issue of ______ proximate causation based on the evidence presented. See, e.g., ___ ____ Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. _________________________ _________________________ 134, 142-47 (White, J., concurring) (treating relative culpability, in antitrust context, as part of causation analysis), overruled on other grounds by Copperweld Corp. v. _______________________________ ________________ Independence Tube Corp., 463 U.S. 752 (1984). The issue of _________________________ proximate cause may not be decided at the pleading stage given the allegations in this complaint.  Relative culpability may also be relevant to the measure of damages. The opinions in Perma Life posit that the benefits _____ ____ received by a plaintiff from its participation in wrongdoing "can of course be taken into consideration in computing damages." -36- pleadings are neither remote nor speculative. These plaintiffs have alleged direct injury to their property, which Holmes ______ requires. Holmes, 503 U.S. at 265-69; see also id. at 276-86 ______ ________ ___ (O'Connor, J., concurring) (analyzing the causation issue as part of the standing issue). Again, viewing this as a matter of whether there is an "innocent victim" requirement inherent in stating a cause of action, I do not believe state law is pertinent. The district court opinion also suggests that the "innocent victim" argument may be available as an affirmative defense. If so, there are a range of possibilities for the contours of the defense. The range includes a sort of absolute defense if the plaintiff has done anything wrong, which is what the district court thought and to which it applied the label of an in pari delicto defense.15 At the other end of the range is __ ____ _______ the position that the relative guilt of the plaintiff is irrelevant. That, I believe, cannot be so,16 and even the  ____________________ Perma Life, 392 U.S. at 140; see also II Areeda & Hovenkamp, _____ ____ ________ Antitrust Law 365c3, at 248 (1995 rev. ed.). _____________ 15 This common law defense derives from the Latin in pari __ ____ delicto potior est conditio defendentis: "In a case of equal or _______ ______ ___ ________ ___________ mutual fault . . . the condition of the [defending] party is the better one." Black's Law Dictionary 791 (6th ed. 1990). The ______________________ in pari delicto defense, though "[i]n its classic formulation . . __ ____ _______ . narrowly limited to situations where the plaintiff truly bore at least substantially equal responsibility for his injury . . ." is now generally given "a broad application to bar actions where plaintiffs simply have been involved generally in 'the same sort of wrongdoing' as defendants." Bateman Eichler, Hill Richards, ________________________________ Inc. v. Berner, 472 U.S. 299, 306-07 (1985) (quoting Perma Life, ____ ______ _____ ____ 392 U.S. at 138). 16 See, e.g., discussion in footnote 14 supra. ___ ____ _____ -37- plaintiffs do not argue that position. While some affirmative defenses, such as the statute of limitations, may on occasion be decided on the pleadings, the assertion of an affirmative defense here would not afford a basis to dismiss the complaint under Rule 12(b)(6). Under any of the plausible articulations of such a defense, the inferences to be drawn from the facts pled here do not permit dismissal. I would reject the proposition, urged by defendants, that an absolute in pari delicto defense is embedded in RICO. In __ ____ _______ construing the language of RICO, the Supreme Court has looked to precedent under the Clayton Act, the statute upon which RICO was modeled. See Holmes, 503 U.S. at 268 ("We may fairly credit the ___ ______ 91st Congress, which enacted RICO, with knowing the interpretation federal courts had given the words earlier Congresses had used first in [the Sherman Act], and later in the Clayton Act's 4. It used the same words, and we can only assume that it intended them to have the same meaning that courts had already given them." (citations omitted)). The Supreme Court, in Perma Life Mufflers, Inc. v. International Parts Corp., _________________________ _________________________ 392 U.S. 134, 138-40 (1968), overruled on other grounds by ________________________________ Copperweld Corp. v. Independence Tube Corp., 463 U.S. 752 (1984), ________________ _______________________ explicitly rejected the existence of an in pari delicto defense __ ____ _______ under the Clayton Act. In Pinter v. Dahl, 486 U.S. 622 (1988), ______ ____ the Court reaffirmed that in its contemporary "broadened" construction, precisely the construction contemplated by the district court here, the in pari delicto defense "is not __ ____ _______ -38- appropriate in litigation arising under federal regulatory statutes." Id. at 632; see Sullivan v. National Football League, ___ ___ ________ ________________________ 34 F.3d 1091, 1107-09 (1st Cir. 1994), cert. denied, 115 S. Ct. ____________ 1252 (1995). For the same reasons, an "unclean hands" defense would seem to be unavailable, as it is not a defense to an antitrust treble damage action. See Kiefer-Stewart Co. v. ___ ___________________ Seagram & Sons, 340 U.S. 211, 214 (1951), overruled on other _______________ ___________________ grounds by Copperweld Corp. v. Independence Tube Corp., 463 U.S. ___________ ________________ _______________________ 752 (1984); see also Simpson v. Union Oil Co., 377 U.S. 13 ___ ____ _______ _______________ (1964). That there is no in pari delicto defense does not mean __ ____ _______ there is no defense at all in which the relative guilt of the plaintiffs may be weighed. It is far more likely that there is in RICO an "equal involvement" defense similar to the "equal involvement" defense recognized under the Clayton Act in Perma _____ Life.17 Recognition of such a defense, patterned on the Clayton ____  ____________________ 17 In Perma Life, five concurring Justices, in four separate __________ opinions, recognized the existence of the equal involvement defense. Justice White wrote that he "would deny recovery where plaintiff and defendant bear substantially equal responsibility for [the] injury resulting to one of them . . . ." 392 U.S. at 146 (White, J., concurring). According to Justice Fortas, "[i]f the fault of the parties is reasonably within the same scale -- if the 'delictum' is approximately 'par' -- then the doctrine ________ ___ should bar recovery." 392 U.S. at 147 (Fortas, J., concurring). Justice Marshall wrote that he "would hold that where a defendant in a private antitrust suit can show that the plaintiff actively participated in the formation and implementation of an illegal scheme, and is substantially equally at fault, the plaintiff should be barred from imposing liability on the defendant." 392 U.S. at 149 (Marshall, J., concurring). Justice Harlan, in an opinion joined by Justice Stewart, indicated that the defense should be allowed in cases where "the plaintiffs were substantially as much responsible . . . as the defendants." 392 U.S. at 156 (Harlan, J., concurring in part and dissenting in -39- Act defense, was extended to securities actions in Bateman _______ Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 306-11 ______________________________ ______ (1985). The equal involvement defense is more demanding of those asserting it than the in pari delicto defense and only bars the __ ____ _______ claims of a plaintiff who "truly bore at least substantially equal responsibility [as the defendant] for the violation" of the federal law at issue. Id. at 308. ___ This circuit has also recognized an equal involvement defense in antitrust actions. Sullivan, 34 F.3d at 1107 ("A ________ plaintiff's 'complete, voluntary, and substantially equal participation' in an illegal practice under the antitrust laws precludes recovery for that antitrust violation." (quoting CVD, ____ Inc. v. Raytheon Co., 769 F.2d 842, 856 (1st Cir. 1985), cert. ____ ____________ _____ denied, 475 U.S. 1016 (1986))). ______ Testing the allegations of the complaint against the Supreme Court's articulation of the equal involvement defense, this complaint survives a Rule 12(b)(6) motion. Under that defense: a private action for damages . . . may be barred on the grounds of the plaintiff's own culpability only where (1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of [RICO] and the protection of the . . . public.  ____________________ part). -40- Bateman, 472 U.S. at 310-11. Both the Supreme Court and this _______ court have cautioned against deciding such defenses in the absence of factual development. See id. at 311 n.21 ("We note, ___ ___ however, the inappropriateness of resolving the question of respondents' fault solely on the basis of the allegations set forth in the complaint."); Sullivan, 34 F.3d at 1109 ("Ultimately ________ . . . these are factual questions for the jury . . . ."). The defendants make a misplaced attempt to argue in favor of the more defendant-helpful in pari delicto defense by __ ____ _______ relying on Tafflin v. Levitt, 493 U.S. 455 (1990). Tafflin, they _______ ______ _______ urge, weakens the analogy of RICO to the Clayton Act, and, therefore, to the equal involvement defense. In Tafflin, the _______ Court held that RICO did not vest exclusive jurisdiction in the federal courts where the language of the statute did not purport to do so and the legislative history did not show that Congress addressed the question. Id. at 460-62. The Court rejected the ___ argument that it should derive such an exclusivity from the fact that actions under the Clayton Act may only be brought in federal court. Id. at 462-63. The analogy to the Clayton Act did not ___ provide the answer because Congress was also presumed to have operated against a backdrop of well-established law governing when there was exclusive federal jurisdiction. Id. at 459-60. ___ There is no such "judicial default rule" which operates in defendants' favor here. Cf. Landgraf v. U.S.I. Film Products, ___ ________ _____________________ 114 S. Ct. 1483, 1505 (1994) (discussing judicial default rules in the context of retroactivity of statutes). -41- Similarly, there is no comfort for defendants in the Supreme Court's rejection in Sedima of application of the ______ "antitrust injury" rule to RICO. "[T]his is so because 'RICO injury' would [otherwise] be an unintelligible requirement, not because there is no parallel between the two statutes." Carter ______ v. Berger, 777 F.2d 1173, 1176 (7th Cir. 1985) (noting the ______ Court's remark in Sedima, 473 U.S. at 489-90 & n.8, that Congress ______ relied on the analogy to antitrust). Indeed, RICO was enacted in 1970, after the Perma Life __________ decision, of which Congress was undoubtedly aware. The modelling of RICO on the Clayton Act was done against the backdrop of judicial recognition of an equal involvement defense. The piece of legislative history relied upon by defendants, to the extent it should be considered at all, may be equally read to support the proposition that Congress implicitly allowed an affirmative equal involvement defense as under the Clayton Act. But defendants do have a point. The analogy to the Clayton Act is not perfect. Indeed, the American Bar Association report from which the civil RICO provisions emerged suggests that not all the accoutrements of the Clayton Act should be imported into RICO. See 115 Cong. Rec. 6995 (1969) (Report of A.B.A. ___ Antitrust Section); Abrams, supra, 1.4, at 25-26. This may be _____ a situation where Congress did not explicitly contemplate the question and so congressional "intent" in the classic formulation simply does not exist. The courts then are left with the delicate task of providing the answer. -42- I very much doubt that the federal definition of "innocence" for purposes of the equal involvement defense would ordinarily involve reference to and incorporation of state law, as the majority asserts.18 The Supreme Court did not look to state law to define the defense in either Perma Life or Bateman, _____ ____ _______ nor should we do so here. Nor has this court looked to state law to define the defense under the Clayton Act in the aftermath of Perma Life. _____ ____ To say there is some form of affirmative defense like the equal involvement defense does not describe precisely the content of such a defense. Even the Supreme Court Justices in Perma Life did not agree on the content. See supra footnote 17. _____ ____ ___ _____ In the absence of factual findings in which to set the questions of the honing of such a defense, there is, and should be, reluctance to engage now in such refinement. The precision of any standard awaits further development. It is enough now to say that the positions at the extremities -- that any wrongdoing disables a plaintiff or that wrongdoing is irrelevant -- are untenable.  ____________________ 18 There may be situations, not present here, in which the state has such an exceptionally strong policy interest in the enforcement of its own laws that Congress would choose to accommodate that interest in the RICO enforcement scheme. This may be more true under RICO than other statutes in as much as Congress has referred to violations of state law in defining predicate offenses under 18 U.S.C. 1961(1)(A). However, the recognition of an interest in enforcement is not the same as the recognition of an interest in a defense. The Rhode Island bribery and extortion statutes do not evidence such an overwhelming interest in affording defendants an in pari delicto __ ____ _______ defense, even before reaching the issue of whether Congress would have wanted to import Rhode Island law into RICO. -43- The equal involvement defense recognized under the Clayton Act and the Securities Act derives its contours from federal policy as recognized by federal statutes. There is no reason not to apply that paradigm to RICO.19 As to the claim under 42 U.S.C. 1983, the plaintiffs have adequately alleged that the harm they suffered was caused by the extortionist policies and practices in which the town officials are claimed to have engaged. Again, there is no need to delve into the distinction between coercive extortion and bribery.  ____________________ 19 The district court was very troubled by the notion of rewarding people who pay bribes to public officials with RICO treble damages, whatever the circumstances of the payment. Roma, ____ 906 F. Supp. at 82-83. That is certainly a reasonable concern. Policy arguments may be made both for and against such a result. In the antitrust field, the Supreme Court has noted that because of the "important public purposes" served by private suits, it is inappropriate to invoke "broad common-law barriers to relief." Perma Life, 392 U.S. at 138. Thus "the plaintiff who reaps the _____ ____ reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition." Id. at ___ 139. This strong enforcement rationale certainly is present in RICO, a statute intended to increase the arsenal of weapons striking at criminal activity. In addition, it may be inherently unfair to deny plaintiffs any ability to pursue a RICO claim where their fault is relatively small. An absolute "innocent victim" requirement would create such an undesirable imbalance.  -44-