**MAINE STATE BUILDING AND CON-STRUCTION TRADES COUNCIL, AFL–CIO, et al., Plaintiffs,**

**v.**

**Elaine L. CHAO, Secretary of Labor, et al., Defendants.**

**No. CIV.03–49–P–DMC.**

United States District Court, D. Maine.

June 5, 2003.

Patrick N. McTeague, McTeague, Higbee, Macadam, Case, Watson & Cohen,

James W. Case, McTeague, Higbee, Macadam, Case, Watson & Cohen, Topsham, ME, Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, DC, for Plaintiffs.

Evan Roth, Office of the U.S. Attorney, Portland, ME, for Defendants.

## MEMORANDUM DECISION ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO AMEND COMPLAINT [1]

DAVID M. COHEN, United States Magistrate Judge.

The defendants move pursuant to Federal Rule of Civil Procedure 12(b) to dismiss the instant complaint, while the plaintiffs move pursuant to Federal Rule of Civil Procedure 15(a) to amend it, in this action arising from a request by a Maine construction company for temporary visas for non-immigrant foreign workers. *See* Motion To Dismiss, etc. ("Motion To Dismiss") (Docket No. 27); Motion for Leave To File an Amended Complaint, etc. ("Motion To Amend") (Docket No. 31).[2] For the reasons that follow, the Motion To Amend is denied and the Motion To Dismiss is granted.[3]

---

1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge David M. Cohen conduct all proceedings in this case, including trial, and to order the entry of judgment.

2. The defendants are Elaine L. Chao, in her capacity as Secretary of Labor; the United States Department of Labor; John D. Ashcroft, in his capacity as Attorney General of the United States; the United States Department of Justice; and James W. Ziglar, in his capacity as Commissioner of the Immigration and Naturalization Service. *See* Verified Complaint for Declaratory and Injunctive Relief ("Complaint") (Docket No. 1) at 1. Although the latter agency has been renamed the Bureau of Citizenship and Immigration Services, *see, e.g.,* 6 U.S.C. § 271; *Bhatt v. Board of Immigration Appeals,* 328 F.3d 912, 913 n. 1 (7th Cir.2003), I will refer to it for purposes of these motions as the "INS." In addition, I will refer to the defendants, collectively, as "Defendants" and the two plaintiff labor unions—the Maine State Building and Construction Trades Council, AFL–CIO, and the Building and Construction Trades Department, AFL–CIO, collectively, as "Unions."

3. The Unions also move for oral argument on the Motion To Dismiss. *See* Letter dated May 15, 2003 to the Honorable David M. Cohen, U.S. Magistrate Judge, from Terry R. Yellig, Esq. (Docket No. 35). Inasmuch as the parties' papers provide a sufficient basis on

## I. Applicable Legal Standards

### A. Motion To Dismiss

■ The Defendants' motion to dismiss implicates both Rules 12(b)(1) and 12(b)(6). When a defendant moves to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir.1991); *Lord v. Casco Bay Weekly, Inc.*, 789 F.Supp. 32, 33 (D.Me.1992). Both parties may rely on extra-pleading materials. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 at 213 (2d ed.1990); *see also Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 699 (1st Cir.1979) (question of jurisdiction decided on basis of answers to interrogatories, deposition statements and an affidavit).

"When evaluating a motion to dismiss under Rule 12(b)(6), [the court] take[s] the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." *Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184, 187 (1st Cir.1993). The defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *Roma Constr. Co. v. aRusso*, 96 F.3d 566, 569 (1st Cir.1996); *see also Jackson v. Faber*, 834 F.Supp. 471, 473 (D.Me.1993).

### B. Motion To Amend

■ Pursuant to Rule 15(a), a party must seek leave of the court to amend a pleading if either the deadline to amend has expired or the party already has amended its pleading once within the time allotted by the rule. Such leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend should be granted in the absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

## II. Factual Context

The Unions filed the instant complaint on February 21, 2003, alleging, *inter alia:*

During or about August to October 2002 Cianbro Corporation ("Cianbro") applied to the United States Department of Labor ("DOL") and/or the Maine Department of Labor ("Maine DOL") for H–2B temporary labor certifications for as many as one hundred and twenty foreign workers to be employed as structural and pipe welders on two giant oil rigs known as the Amethyst 4 and 5 that are under construction in the harbor of Portland, Maine. Complaint ¶ 11. To make this determination, the DOL and the Maine DOL were required to calculate prevailing wages and working conditions for the jobs for which Cianbro sought temporary labor certifications pursuant to a DOL regulation, 20 C.F.R. § 656.40. *Id.* ¶ 12.[4]

On or about November 18, 2002 the Maine DOL transmitted a State Agency Transmittal of Application for Alien Employment Certification ("Transmittal") on behalf of Cianbro to DOL regional certifying officer Raymondo Lopez for final approval. *Id.* ¶ 15. The Transmittal stated that the "prevailing wage" for H–2B labor

---

which to decide the motion, the request is denied.

**4.** The Complaint mistakenly refers to the regulation in question as "29 C.F.R. § 656.40." Complaint ¶ 12.

certification purposes applicable to the jobs for which Cianbro sought visas was $15.20 per hour, based on a wage determination by the DOL pursuant to the McNamara–O'Hara Service Contract Act ("SCA"). *Id.* ¶ 16. The Transmittal further indicated that the Maine DOL relied on an SCA wage rate pursuant to Lopez's advice, but believed that the SCA likely underestimated wages for similar work of a similar type in this location. *Id.* ¶ 18.

On November 27, 2002 Edward C. Sullivan, president of the plaintiff Building and Construction Trades Department, AFL–CIO, sent a letter to Emily Stover DeRocco, assistant secretary of labor for employment and training, objecting to application of a prevailing wage rate based on the SCA rather than the Davis–Bacon Act. *Id.* ¶ 19. By letter dated January 6, 2003 DeRocco advised Sullivan that she had requested input on the matter from the Regional Office of the DOL Employment and Training Administration in Boston, Massachusetts, and from Cianbro, and that she would contact him after she received information from these sources. *Id.* ¶¶ 20–21. She had not contacted him further as of the date of filing of the Complaint. *Id.* ¶ 22. However, the Unions were advised informally that on or about February 5, 2003 temporary labor certifications were issued to Cianbro for the admission of fifty pipe welders and ten structural welders. *Id.* ¶ 23.

Many able, willing, qualified and available U.S. workers applied for positions with Cianbro as structural and pipe welders during the period when the DOL was supposed to be reevaluating the matter after receipt of Sullivan's letter; however, none was offered employment by Cianbro. *Id.* ¶ 24.

INS regulations (8 C.F.R. § 214.2(h)(6)(iii)(A)) provide that before filing a petition with the INS director in whose jurisdiction a petitioning employer intends to employ an H–2B non-agricultural temporary worker, the employer must apply for a temporary labor certification with the Secretary of Labor. *Id.* ¶ 30. The Secretary of Labor's temporary labor certification provides advice to the INS director on "whether or not United States workers capable of performing the temporary services or labor are available and whether or not the alien's employment will adversely affect the wages and working conditions of similarly employed United States workers." *Id.* ¶ 31 (quoting 8 C.F.R. § 214.2(h)(6)(iii)(A)).

After obtaining a determination from the Secretary of Labor, the petitioning employer may then file a petition on a Form I–129, accompanied by the labor certification determination and supporting documents, with the director having jurisdiction in the area of intended employment. *Id.* ¶ 32. Applications for certification of temporary employment of nonimmigrant aliens must initially be filed not with the DOL but with the state employment service serving the area of proposed employment. *Id.* ¶ 33.

DOL regulations explain that the DOL must make two preliminary determinations: "First, the minimum level of wages, terms, benefits, and conditions for the particular job opportunities, below which similarly employed U.S. workers would be adversely affected, must be established.... Second, the wages, terms, benefits, and conditions offered and afforded to the aliens must be compared to the established minimum levels." *Id.* ¶¶ 34–36 (quoting 20 C.F.R. § 655.0(a)(2)). The regulations explain that "[i]f it is concluded that adverse effect would result, the ultimate determination of availability within the meaning of the [Immigration and Nationality Act] cannot be made since U.S. workers cannot be expected to accept employment under con-

ditions below the established minimum levels." *Id.* ¶ 37 (quoting 20 C.F.R. § 655.0(a)(2)). Per the regulations, "[o]nce a determination of no adverse effect has been made, the availability of U.S. workers can be tested only if U.S. workers are actively recruited through the offer of wages, terms, benefits, and conditions at least at the minimum level or the level offered to the aliens, whichever is higher." *Id.* ¶ 38 (quoting 20 C.F.R. § 655.0(a)(2)).

The Immigration and Nationality Act ("INA") does not provide a definition or guide for ascertaining whether wages paid to an alien will "adversely affect" wages and working conditions of U.S. workers. *Id.* ¶ 39. However, DOL regulations provide that the employment of aliens will be deemed to adversely affect U.S. workers unless it appears that such employment will be for wages no less than those prevailing for U.S. workers employed in the area of intended employment. *Id.* ¶ 40. DOL regulations also provide that the "prevailing wage" for labor certification purposes shall be the rate provided pursuant to the Davis–Bacon Act if the job opportunity in question is in an occupation subject to a wage determination under that act. *Id.* ¶ 41. Application of an SCA prevailing wage rate for "welders" in this instance failed adequately to serve the purpose of the prevailing wage requirement in the labor-certification process, which is to ensure that American workers, rather than foreign workers, will be employed whenever possible. *Id.* ¶ 43. Nor is this application consistent with the intent of the INA inasmuch as the resultant wage is so low that American workers who have the skills and training to perform welding work on the two oil rigs under construction by Cianbro will not accept employment. *Id.* ¶ 44.

Moreover, the jobs offered by Cianbro for which it sought H–2B labor certifica-

tions are in the construction industry and therefore are not occupations covered by the SCA. *Id.* ¶ 45. Accordingly, a wage under the Davis–Bacon Act should have been adopted by the Maine DOL and approved by the DOL for the jobs offered by Cianbro on the two oil rigs in the Portland harbor. *Id.* ¶ 46.

As relief, the Unions sought (i) a declaration hat approval by the DOL of the use of a prevailing wage rate based on the SCA, instead of the Davis–Bacon Act, under the circumstances was arbitrary, capricious, an abuse of discretion and not in accordance with the law, and (ii) an injunction requiring rescission of the temporary labor certifications issued to Cianbro and reconsideration of the Cianbro application and barring the Attorney General and INS Commissioner from issuing visas based on the certifications issued on or about February 5, 2003 to Cianbro. *Id.* at 11.

On March 21, 2003 the Unions filed an application for a temporary restraining order. *See* Application for Temporary Restraining Order (Docket No. 12). They argued, *inter alia,* that they would suffer irreparable harm if the application were denied:

Here, the above-entitled case will be rendered moot unless the INS is enjoined from approving Cianbro's applications for H–2B visas, pending the Court's final decision on the merits, because such action by the INS would deprive the Court of subject matter jurisdiction to review the validity of the U.S. DOL's labor certifications that support Cianbro's visa applications.

The decision of a consular officer to grant or deny a visa is not subject to judicial review . . . .

\*　　\*　　\*　　\*　　\*　　\*

Accordingly, the plaintiff Unions' challenge of the labor certifications that

support the visa applications filed by Cianbro with the INS will undoubtedly become moot in the event the INS issues H–2B visas to the 60 foreign workers sought by Cianbro inasmuch as the Court will lack subject matter jurisdiction over the case because of the doctrine of consular nonreviewability.

Memorandum of Points and Authorities in Support of Application for Temporary Restraining Order and Preliminary Inunction [sic] ("TRO Memorandum") (Docket No. 13) at 22–25.[5]

By order dated March 27, 2003 I denied the Unions' request for a TRO, concluding, "(i) the plaintiffs have failed to establish standing to seek the requested relief or that their claims are ripe, and, in any event, (ii) pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), the court is without jurisdiction to affect any decision or action the Attorney General of the United States or the Commissioner of the Immigration and Naturalization Service may take in connection with the H–2B visa application of non-party Cianbro Corporation now pending before the Immigration and Naturalization Service." Order on Application for Temporary Restraining Order (Docket No. 24) at 2.

On April 1, 2003 the INS approved Cianbro's Form I–129 applications for twenty-three beneficiaries. Declaration of Supervisory Center Adjudications Officer Daniel J. Kane (Docket No. 28) ¶¶ 5–6. On April 4, 2003 the Defendants moved to dismiss for lack of standing, lack of ripeness and lack of jurisdiction, as well as mootness and failure to state a claim upon which relief can be granted. *See* Motion To Dismiss at 2.

### III. Analysis

### A. Motion To Dismiss

■ In resisting the Motion To Dismiss, the Unions make two curious arguments. First, they insist that their cause of action is (and always has been) about DOL's asserted pattern and practice of failing to apply Davis–Bacon Act wage rates in issuing labor certifications—not about Cianbro's H–2B visa applications, in particular. *See* Memorandum of Points and Authorities in Opposition to Motion To Dismiss ("Dismiss Opposition") (Docket No. 30) at 5–6, 10–11, 18–19. Second, they assert that they earlier argued only that their request for temporary injunctive relief—not their entire case—would become moot upon issuance of the Cianbro visas. *See* *id.* at 18–20.

Neither assertion is correct. The Unions' complaint is devoid of any pattern-and-practice allegation. And they represented in their TRO Memorandum that issuance of the Cianbro visas would deprive the court of subject matter jurisdiction over their entire case, thus mooting it. The Cianbro visas now have issued, mooting all claims fairly set forth in their complaint.

In seeking to avoid dismissal on this ground, the Unions make one final argu-

---

**5.** The Unions cited, *inter alia,* a case in which the District Court for the Southern District of New York rejected the plaintiff company's claim that it was not challenging denial of a visa but rather inclusion of the company on a "lookout list," from which the visa denial resulted. *See* TRO Memorandum at 24. As the Unions noted, *see id.,* the court in that case observed, "such a challenge cannot be divorced from an attack of the decision itself. The Court's scrutiny of the predicate for the decision necessarily causes the Court to interfere with the process of the decision which it has been precluded from reviewing. Just as other courts have held in similar circumstances, plaintiffs cannot make an end-run around nonreviewability of the decision by challenging its foundation," *Al Makaaseb Gen. Trading Co. v. Christopher,* No. 94 CIV.1179 (CSH), 1995 WL 110117, at *3 (S.D.N.Y. Mar.13, 1995). The same is true of the DOL's labor certification in this case.

ment: that their claims qualify for a narrow exception to mootness reserved for issues that are capable of repetition, yet evading review. *See id.* at 18–21; *Gulf of Me. Fishermen's Alliance v. Daley,* 292 F.3d 84, 88–89 (1st Cir.2002) ("In order to qualify for this narrow exception to the mootness doctrine, a plaintiff must show that (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.") (citations and internal quotation marks omitted).

The problem for the Unions is that, assuming *arguendo* they were again to press a similar claim, it would again evade judicial review for good reason: 8 U.S.C. § 1252(a)(2)(B)(ii) renders such claims nonreviewable.

Inasmuch as the court is without jurisdiction to grant the relief requested, and the Unions' case is in any event (by their own previous admission) now moot, dismissal is warranted.

## B. Motion To Amend

■ The Unions make a final bid to save their case, moving to amend their complaint "in order to make clear their claim that the failure of the [DOL] to comply with its own regulations in determining whether the wage stated in applications for labor certifications submitted on behalf of the Cianbro Corp., equals or exceeds the 'prevailing wage' in the area of intended employment is part of a pattern and practice of disregarding its obligation to comply with its own regulations." Motion To Amend at 2.

Their proposed amended complaint sets forth a second cause of action challenging as "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law" DOL's asserted "pattern and practice of disregard ... of its responsibil-ity under its own regulations to consider whether the wage stated in an application for a labor certification for a job opportunity is in an occupation that is subject to a wage determination under the Davis–Bacon Act applicable to the area of intended employment[.]" Supplemental and Amended Verified Complaint for Declaratory and Injunctive Relief ("Proposed Amended Complaint"), attached to Motion To Amend, ¶ 51–52.

The Unions seek (i) a declaration that DOL "has consistently and repeatedly disregarded its responsibility under 29 C.F.R. § 656.40(a)(1)" to consider usage of Davis–Bacon wage determinations and (ii) an injunction mandating fulfillment of that responsibility. *Id.* at 12.

As the Defendants suggest, *see* Opposition to Plaintiffs' Motion To Amend and Reply in Support of Motion To Dismiss ("Amend Opposition") (Docket No. 34) at 9–12, 14–17, the new complaint amounts to an exercise in futility for two reasons: The Unions lack standing to pursue it and, in any event, the complaint fails to state a claim upon which relief can be granted.

As the Unions note, unions have been held to have standing pursuant to the judicial-review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–06, to challenge the manner in which the INS has implemented the very visa system in issue here—temporary visas for non-immigrant foreign workers. *See* Dismiss Opposition at 5–11. For this proposition, the Unions rely heavily on two cases, *International Union of Bricklayers v. Meese,* 761 F.2d 798 (D.C.Cir.1985), and *International Longshoremen's & Warehousemen's Union v. Meese,* 891 F.2d 1374 (9th Cir.1989). *See id.* However, the claim pressed in the Proposed Amended Complaint is materially distinguishable from those asserted in *Bricklayers* and *ILWU.*

In both *Bricklayers* and *ILWU*, unions challenged INS policies embodied in written documents as violative of Congress' statutory scheme for the admission of non-immigrant alien workers. *See Bricklayers,* 761 F.2d at 801 (INS operations instruction); *ILWU,* 891 F.2d at 1376–78 (INS advisory opinion and policy memorandum). Here, by contrast, the Unions allege that the DOL has a practice of failing to heed its own regulations concerning the role of the Davis–Bacon Act. *See* Proposed Amended Complaint ¶¶ 47–52. This claim necessarily implicates the mechanics of DOL's case-by-case decision-making, potentially intruding on the core area of individual visa decisions that Congress has deemed nonreviewable. *Compare, e.g., Bricklayers,* 761 F.2d at 801 ("This proposition [that decisions by a consular officer on particular visa applications are nonreviewable] has no application here because appellants do not challenge a particular determination in a particular case of matters which Congress has left to executive discretion. Rather, they charge that the general Operations Instruction promulgated by the INS violates the pattern set forth in §§ 101(a)(15)(H) and 212(a)(14) of the [INA] as to the proper manner by which nonimmigrant aliens shall be admitted to perform labor.").[6]

In any event, as the Defendants point out, *see* Amend Opposition at 10–11, courts have been hesitant to discern standing on the part of a plaintiff group or association when the claims in issue require individualized assessments that would be difficult—if not fundamentally unfair—to undertake in the absence of potentially affected persons (such as employers requesting visas, in this case), *see, e.g.,*

*Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 597–98 (2d Cir.1993) ("Treating the due process challenge, then, as 'as applied,' we agree with the district court that the RSA lacks standing to bring the claim. The determination in a particular case that a landlord has been arbitrarily deprived of this property interest in a constitutionally adequate return will depend on the same individualized economic and financial data on which the takings analysis would depend.... Because we believe that resolution of the RSA's due process claim requires the individual participation of its members, we hold that the association lacks standing to bring that claim."); *Comite de Apoyo a los Trabajadores Agricolas (CATA) v. United States Dep't of Labor,* 995 F.2d 510, 514 (4th Cir.1993) (holding that migrant farm workers' group lacked standing to challenge DOL's revised wage methodology in absence of grower whose DOL-approved wage scale was in issue). Such restraint is advisable in this case, in which—from all that appears in the Proposed Amended Complaint—the Unions decry a nation-wide practice extending beyond the bounds of welder job categories, potentially entailing scrutiny of scores of individualized assessments as to whether a Davis–Bacon Act wage category applied on the facts of the particular employer's labor-certification request. *See generally* Proposed Amended Complaint.

■ Finally, even assuming *arguendo* that the claim pressed in the new complaint were justiciable, the proposed complaint fails to set forth a claim for which relief can be granted. As the First Circuit has noted:

---

**6.** I am mindful that 8 U.S.C. § 1252(a)(2)(B)(ii) does not expressly preclude judicial review of the DOL job certifications on which INS visa determinations partially rest. However, as the Unions themselves have pointed out, *see* TRO Memorandum at 23–25, courts have declined to review "predicate" findings on nonreviewability grounds, *see, e.g., Chun v. Powell,* 223 F.Supp.2d 204, 206–07 (D.D.C.2002).

In the menagerie of the Civil Rules, the tiger patrolling the courthouse gates is rather tame, but not entirely toothless. Despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation. Moreover, the rule does not entitle a plaintiff to rest on subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts. We understand that, for pleading purposes, the dividing line between sufficient facts and insufficient conclusions is often blurred. But the line must be plotted: It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that conclusions become facts for pleading purposes.

*Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52–53 (1st Cir.1990) (citations and internal punctuation omitted).

In this case, the Proposed Amended Complaint relies solely on the bald, conclusory assertion that the DOL has engaged in the unlawful pattern and practice alleged. *See generally* Proposed Amended Complaint. No actual instance—other than the Cianbro instance—is set forth. *See generally id.* The complaint accordingly fails to state a claim for which relief can be granted. *See, e.g., Schullo v. Town of Cicero,* No. 97 C 6456, 1998 WL 417598, at \*3 (N.D.Ill. July 20, 1998) ("While the Supreme Court held that notice pleading will suffice for a section 1983 claim against a municipality, a claim of a general policy of 'retaliation' followed by an allegation of one instance of such retaliation does not suggest a pattern or an enduring practice that violates constitutional rights in a systematic manner.") (citations omitted).

On this ground as well, I deny the Unions' motion to amend their complaint.

## IV. Conclusion

For the foregoing reasons, the Unions' motion to amend their complaint is **DENIED** and the Defendants' motion to dismiss is **GRANTED**.