# United States Court of Appeals

## For the First Circuit

No. 03-2040

MAINE STATE BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO;
BUILDING AND CONSTRUCTION TRADES DEPARTMENT, AFL-CIO,
Plaintiffs, Appellants,

v.

UNITED STATES DEPARTMENT OF LABOR; ELAINE L. CHAO,
in her official capacity as Secretary of Labor;
UNITED STATES ATTORNEY GENERAL; UNITED STATES DEPARTMENT OF
JUSTICE; COMMISSIONER, Immigration and Naturalization Service,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
[Hon. David M. Cohen, U.S. Magistrate Judge]

Before
Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Smith,[*] District Judge.

Terry R. Yellig, with whom Sherman, Dunn, Leifer & Yellig, P.C., was on brief for appellants.

Evan J. Roth, Assistant United States Attorney, with whom Paula D. Silsby, United States Attorney, was on brief for appellees.

February 23, 2004

---

[*]Of the District of Rhode Island, sitting by designation.

**SMITH**, **District Judge**.  In this case, two construction workers' unions claim that the federal and Maine departments of labor applied an erroneous statutory standard when making the decision to approve sixty temporary work certifications for foreign workers.  We assume that this allegation is true for purposes of deciding whether that one-time error may form the basis for the requested declaratory and injunctive relief.

The district court's decision sets forth the background of the case in full, see Maine State Building and Construction Trades Council, AFL-CIO v. Chao, 265 F. Supp. 2d 105, 107-110 (D. Me. 2003).  A précis of the facts is sufficient for our purposes.  The dispute centers on the construction of two oil rigs in the harbor of Portland, Maine.  Between August and October of 2002, Cianbro Corporation ("Cianbro"), an industrial contractor, applied to the United States Department of Labor ("U.S. DOL") and the Maine Department of Labor ("Maine DOL") for H-2B temporary labor certifications for approximately one hundred and twenty foreigners to be employed as structural and pipe welders on the rigs.  Before issuing the certifications, the U.S. DOL and Maine DOL were required to calculate the prevailing wages for the jobs in question, in order to ensure that such workers would not be paid wages less than those paid to American workers.  See 20 C.F.R. § 656.40.  This they did by using a wage calculus set forth in the McNamara-O'Hara Service Contract Act ("SCA"), 41 U.S.C. §§ 351-358,

and related regulations. That was a mistake. The wage rate should have been calculated by reference to the Davis-Bacon Act, 40 U.S.C. §§ 3141-3148, rather than the SCA.[1] Although notified of the error by letter, the U.S. DOL did not rectify the problem before issuing temporary labor certifications to Cianbro for the admission of fifty pipe welders and ten structural welders. Armed with these certifications, Cianbro filed a petition with the Immigration and Naturalization Service ("INS")[2] for the issuance of the H-2B temporary work visas to the certified foreign employees. On April 1, 2003, the INS approved Cianbro's applications for twenty-three beneficiaries.

During the pendency of the INS petition, the Maine State Building and Construction Trades Council, AFL-CIO, and the Building and Construction Trades Department, AFL-CIO ("the Unions") brought

---

[1] There is some discrepancy in the record about the nature of the mistake and whether, in fact, there actually was any mistake. The district court found that both the Maine DOL and U.S. DOL applied the SCA to calculate the prevailing rate. The record reflects, however, that the Maine DOL applied the SCA, but that the U.S. DOL found both the SCA and Davis-Bacon Act inapposite. The U.S. DOL appears to have applied a third standard, the Bureau of Labor Statistics' "Occupational Employment Statistics." Whether the formula used by the U.S. DOL was derived from the SCA or some other source, however, is ultimately irrelevant, because all agree that, for purposes of this appeal, the Davis-Bacon Act should have been used, but was not.

[2] Since this action was filed, the INS has been renamed the Bureau of Citizenship and Immigration Services. See 6 U.S.C. § 271. All court filings, however, reflect that the operative events in this case occurred before the official change in title, and we therefore refer to the agency as the INS.

this action against the U.S. DOL, Elaine Chao, in her official capacity as the Secretary of Labor, the United States Attorney General, the United States Department of Justice, and the Commissioner of the INS (collectively "the Government"). The Unions sought a declaration that the U.S. DOL's use of the SCA, as opposed to the Davis-Bacon Act, to calculate the prevailing wage rate was arbitrary and capricious, an abuse of discretion and not in accordance with the law. They also requested an injunction requiring rescission of the temporary labor certifications issued to Cianbro, and barring the Attorney General and the INS Commissioner from issuing the work visas based on the certifications.

The district court[3] denied the Unions' application for a temporary restraining order, finding that it lacked jurisdiction to affect any decision or action of the Attorney General or INS Commissioner in connection with the H-2B visa application. The court also held that the Unions lacked standing to seek the requested relief. The Government subsequently moved to dismiss the case under Rule 12(b) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction, standing, and ripeness, as well as for failure to state a claim. The Unions opposed this dismissal motion and filed concurrently a motion to amend their

---

[3] The parties consented to Magistrate Judge Cohen's jurisdiction over the entire case, pursuant to Fed. R. Civ. P. 73(b) and 28 U.S.C. § 636(c).

complaint to allege a second cause of action which, they hoped, would cure the flaws of the first. This new cause of action challenged "as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law" the DOL's alleged

> pattern and practice of disregard . . . of its responsibility under its own regulations to consider whether the wage stated in an application for a labor certification for a job opportunity is in an occupation that is subject to a wage determination under the Davis-Bacon Act . . . .

Maine State Building and Construction Trades Council, 265 F. Supp. 2d at 111 (citing Proposed Amended Complaint, ¶¶ 51-52). The district court granted the Government's motion to dismiss, finding that the case was moot because the H-2B visas had already issued. Furthermore, the district court denied the Unions' motion to amend their complaint, holding that they lacked standing to press their claims and failed to state a claim upon which relief could be granted. We review both the dismissal of the original complaint and the decision of the district court to deny the Unions' motion to amend.

Our review of a dismissal on the grounds of mootness is de novo. Maine School Admin. Dist. No. 35 v. Mr. and Mrs. R., 321 F.3d 9, 17 (1st Cir. 2003). "Even if an actual case or controversy exists at the inception of litigation, a case may be rendered moot (and, therefore, subject to dismissal) if changed circumstances eliminate any possibility of effectual relief." Id. Where the

-5-

relief sought is injunctive in nature, "this ordinarily means that once the act sought to be enjoined occurs, the suit must be dismissed as moot." Id.

The complaint, as originally filed, seeks relief only with respect to the U.S. DOL's treatment of Cianbro's application, and that relief is now moot. The temporary labor certifications and H-2B visas have already issued; there is nothing to enjoin. In resisting disposition on this ground, the Unions purport to rely on our decision in Allende v. Shultz, 845 F.2d 1111 (1st Cir. 1988). We were confronted there with an allegedly unlawful, official immigration policy, and concluded that "[a]lthough the specific application of that policy against Allende in March 1983 is moot, the validity of that policy in general remains a live controversy." Id. at 1115 n.7. Unlike Allende, however, there is no such policy of general application, whether explicit or tacit, identified in the original complaint. Once the labor certifications and H-2B visas issued, there was no longer any case or controversy to decide.

Anticipating defeat on this issue, the Unions advance an alternative position: they concede the possibility that the Cianbro-related allegations are moot, but invoke the exception to the mootness rule for actions "capable of repetition, yet evading review." Weinstein v. Bradford, 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975). "In order to qualify for this narrow

-6-

exception to the mootness doctrine, a plaintiff must show that '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" Gulf of Maine Fisherman's Alliance v. Daley, 292 F.3d 84, 89 (1st Cir. 2002) (citing Weinstein, 423 U.S. at 149).

Though their position as to the first prong is not entirely without merit,[4] the Unions have not alleged any factual basis for the claim that they will be victimized by the same error ever again. Bromides about the American worker's potential for future job losses are unavailing without some concrete allegations that the Government is likely to repeat its miscalculation of the prevailing wage rate by using the wrong standard. Thus, the Unions fail to meet the standard for likelihood of repetition.

---

[4] The Unions were notified of the issuance of the temporary labor certifications on February 5, 2003. Cianbro's petition for H-2B visas was received at the Vermont Service Center of the INS on March 21, 2003, and approved on April 1, 2003. The Unions filed their complaint and application for a temporary restraining order on March 21, 2003, informing the court that speed was of the essence because of the imminent INS action. Although the court did enter an order denying the request for a temporary restraining order prior to the INS' approval of the visas, it cannot be said that the Unions' case was "fully litigated" by that time. It is doubtful, even under expedited review, that this case could have been fully litigated within a matter of weeks. Cf. Gulf of Maine Fishermen's Alliance, 292 F.3d at 89 (one year was a sufficient period of time within which the case could have been fully litigated; the losing party therefore could not satisfy the first prong of the "capable of repetition, yet evading review" exception).

Their first complaint reduced to ashes, the Unions seek to have it rise like a phoenix in their motion to amend. The amendment, which the district court rejected, merely inserted the words "pattern and practice" into the same aggregate of factual claims set forth in the first complaint. "We review denials of leave to amend under Rule 15 for abuse of discretion, deferring to the district court for any adequate reason apparent from the record." Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994). There is adequate reason in ample supply. The Unions cannot construct a "pattern and practice" complaint simply by changing the label on the package. Nothing other than the Cianbro incident is offered to support the conclusory statement that the Government has a practice of "disregarding its obligation to comply with its own regulations." Motion to Amend, at 2. Though the court denied the amendment for "failure to state a claim for which relief can be granted," what it more precisely intended was a denial on the basis of futility. See, e.g., Hatch v. Department For Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001) ("We view the court's exercise of discretion in this area of the law through the prism of Federal Rule of Civil Procedure 15(a), which indicates that leave to amend a complaint 'shall be freely given when justice so requires.' In practice, this means that the denial of such a motion will be upheld so long as the record evinces an arguably adequate basis for the court's decision (e.g.,

futility, bad faith, undue delay, or a dilatory motive on the movant's part).").  Because this amendment sets forth no scenario that would entitle the Unions to the requested relief, we find that the district court did not abuse its discretion in denying as futile the Unions' motion to amend.  This ruling is without prejudice to the Unions' right to bring a new pattern and practice action in the future based on identified facts that justify it. Given this outcome, it is unnecessary for us to review the district court's disposition of the case based on lack of subject-matter jurisdiction or lack of the Unions' standing.

Affirmed.